**TRINITY RIVER AUTHORITY of Texas,
Appellant,**

v.

**Robert K. HUTCHINGS, Trustee, et al.,
Appellees.**

**No. 7018.**

Court of Civil Appeals of Texas.

Beaumont.

Jan. 30, 1969.

Lloyd C. Martin, Huntsville, for appellant.

W. C. McClain, Conroe, and Robert F. Atkins, Coldspring, for appellees.

STEPHENSON, Justice.

This is a condemnation suit involving 500 acres of land taken by the Trinity River Authority (T.R.A.) as a part of the Lake Livingston Reservoir Project. Trial was by jury and T.R.A. has brought this appeal. The only issue submitted to the jury was as to the value of the land taken. The parties will be designated T.R.A. and Hutchings.

 T.R.A.'s first series of points contend there was no evidence to support the

finding of the jury that the value of the land taken was $187,000.00 ($375.00 per acre), and that there was insufficient evidence to support such finding. In support of these two points of error, and as separate grounds of error, it is argued that the trial court erred in admitting evidence of sales of various properties which were not comparable, and of other sales which had been enhanced in value as a result of this project. In passing upon the "no-evidence" point, we consider only the evidence favorable to the finding of the jury, and in passing upon the "insufficient-evidence" point, we consider the entire record. The property in question consists of two adjacent tracts of 200 and 300 acres, both owned by Hutchings. The date of taking was July 11, 1967.

Hutchings called two witnesses, Stuart F. Clark and J. W. Dinkins, who testified as to the value of this land. No point of error is made that either of them failed to qualify as an expert witness as to land values.

Clark testified: This land is located in central northeast San Jacinto County, about four miles north of the town of Coldspring, and about 70 or 75 miles from Houston. This property fronts on the Trinity River, with about 1,000 feet of river frontage. The highest and best use of this property would be for subdivision purposes. It has almost a half mile of frontage on a black-top highway. About 200 acres is open and the balance is in the river bottom. The timber is hardwood, and not particularly good as merchantable saw timber. It has been cut over. There is a 7 or 8 acre lake on the land. The only improvements are the pasture and fence on the property line. It is pretty high land and the continental table shows 95 to 105 feet elevation. About 20 acres of the land on the river overflows. There are subdivisions all up and down the Trinity River. There is a good demand for subdivision land all through this and adjacent counties. It is a very pretty piece of land. The Trinity River is good for fishing, hunting,

boating, swimming and recreation. A tract of land with lake frontage, river frontage or creek frontage is worth 125 to 200 percent more because of the water on it. Ninety-five percent of the land sales in San Jacinto County are to people in Harris County. Several reasons are they like trees and rolling country and it is accessible but far enough from Houston to get out of the traffic where it is quiet. The low tax rate compared with Harris County is a big selling point. He used the market data approach in appraising this land based upon comparable prices of similar land.

Clark testified to two comparable sales. The first, *Hooper to Harder*, was a 610 acre tract in Montgomery County, about 3 miles from the San Jacinto County line, August 26, 1965. The land is 75 to 80%' wooded, has water frontage with no improvements except fencing with about ¾ mile of highway frontage, and is cut over. This tract is about 6 miles from an interstate highway out of Houston. This tract is located about 22 miles to the south and southwest of the land the subject of this suit. The 610 acre Hooper to Harder tract sold for $450.00 per acre.

The second comparable sale testified to by Clark was the *Browder to Dotras* 50.86 acre tract of land located in San Jacinto County, about 22 miles southwest of the tract sought to be condemned. The sale was June 28, 1967, and the price $460.00 per acre. The only improvements on this tract of land was the fencing on two sides. It was 90% cut-over wood. It had creek frontage on Peach Creek and located about ¼ mile off a gravel road.

Dinkins testified: He valued the land involved in this suit according to the market data approach. He described the land substantially as it was described by Clark. The highest and best use was for subdivision purposes. The most important factors in reaching that conclusion were access, trees and water. There is a great demand from Houston of from one to five acre tracts of land.

The comparable sales testified to by Dinkins were as follows: A tract of land 198.964 acres in size sold by *Sadler to Price*, September 27, 1967 in Montgomery County, Texas. This tract is located about 5 miles east of Willis and about 23 miles west and south of the land involved in this suit. This tract had about 3,000 feet of road frontage, about 25% open land, and a lake site of about 20 acres. It had been used as ranch land, grazing land, at the time of the sale. Perimeter fencing was the only improvement. Caney Creek formed its East line. This land sold for $590.00 per acre.

The second comparable sale testified to by Dinkins was as follows: *Brumbelow to Bartusch* sale, August 1, 1964, of 249 acres of rolling land in San Jacinto County. This tract is located about seven miles north and east of the property involved in this suit. It has a half mile of highway frontage, with 60% open land and the balance scattered with pine and hardwood. This land sold for $99,600.00, with $15,-000.00 in improvements, leaving a balance of $350.00 per acre for the new land. This land is situated about three miles from the main body of the lake.

The third comparable sale testified to by Dinkins was as follows: *Sewell to Spaceland, Inc.* sale of 40.718 acres of land in Walker County, December 4, 1967. This tract of land is located about 17 miles west and north of the property in this suit. It fronts about 2,000 feet on the highway, is slightly rolling, with pine and hardwood timber. There were no improvements. This land sold for $500.00 per acre. Dinkins then testified that in his opinion the fair market value of the Hutchings land on July 11, 1967 was $450.00 per acre.

T.R.A. contends that there is no evidence to support the jury finding as to value because the opinion evidence of the expert witnesses is based upon sales which were not comparable as a matter of law. It is argued that such sales were not comparable because the sales were too remote

as to location, the economic environment was entirely different, and that there was too much difference in size of one of the tracts. It is also argued that one tract is so close to the construction as to cause the value of the land to be enhanced.

A complete review of the Texas decisions as to the question of comparability has led us to conclude these three simple rules: (1) It is sufficient it can be shown as a predicate that the lands involved in prior sales are similar to those taken. (2) The trial court has great discretion in determining whether sales offered in evidence are comparable to the land being taken. (3) A trial court's decision that a prior sale is sufficiently similar to be considered comparable cannot be reviewed except to determine whether there has been an abuse of discretion. Crouch v. State, 413 S.W.2d 141 (Tex.Civ.App.1967) and cases cited.

The case of Hays v. State, 342 S. W.2d 167, 174 (Tex.Civ.App.1960, error ref. n. r. e.) stated the test as to admissibility as follows:

"But should it appear that reasonable minds cannot differ from the conclusion that the evidence of another sale lacks probative force because of dissimilarities, remoteness in time and distance, or not being voluntary, then the trial court should exclude evidence of the details of such other sales."

We find no abuse of discretion on the part of the trial court in admitting evidence as to the comparable sales. These comparables were not so dissimilar as to make them inadmissible as a matter of law. The points of error are overruled.

T.R.A.'s next point of error is that the trial court erred in refusing to grant a new trial because of jury misconduct. No findings of fact or conclusions of law were requested or filed. There is conflicting evidence as to whether or not the jury misconduct occurred. The overruling of the

motion for new trial is an implied finding by the trial court that the misconduct did not occur. The evidence being conflicting, the decision of the trial court must be accepted as final. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462 (1943). This point is overruled.

Having found no errors on the part of the trial court, T.R.A.'s contention that the cumulative effect of the points of error require a reversal, is overruled.

Judgment affirmed.