**TRINITY RIVER AUTHORITY of Texas, Appellant,**

v.

**Marvin H. McMURREY, Jr., Trustee, et al., Appellees.**

**No. 7047.**

Court of Civil Appeals of Texas.

Beaumont.

March 13, 1969.

Lloyd C. Martin, Huntsville, Clark, Thomas, Harris, Denius & Winter, Austin, Bryan, Suhr, Bering & Bailey, Houston, for appellant.

Robert F. Atkins, Coldsprings, McClain & Harrell, Conroe, for appellees.

KEITH, Justice.

The appeal is from a judgment wherein the landowners, in a condemnation proceeding, were awarded $534,377.19 as the market value of 1,303 acres of land taken for use in connection with the Livingston Dam and Reservoir in San Jacinto County. Judgment was entered upon the verdict of the jury in answer to a single issue finding the market value of the land taken, exclusive of the minerals, to be $400.00 per acre. By stipulation of the parties, all other issues, including the damages to the mineral estate caused by the inundation of the surface, were removed from dispute. There were no objections to the charge or the accompanying boiler-plate definition of market value.

Upon appeal, the condemning authority complains (a) that there was no evidence of probative value to support the jury finding of market value, and (b) the finding of

market value is so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust.

■ The first point presents a question of law and we must consider only the evidence that tends to support the findings and disregard all evidence contrary thereto. The second point presents a question of fact, and we must weigh and consider all of the evidence in the case. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); Tudor v. Tudor, 158 Tex. 559, 314 S.W.2d 793 (1958).

At the outset, we confess that there is a wide divergence in the expert opinion evidence as to the market value of the property taken, perhaps more than is customarily found in such cases. The variation in the opinions as to value, it seems clear, resulted from the fact that the experts differed as to what was the highest and best use for which the property was adapted. Appellees' only witness, *Clark*, based his appraisal upon the premise that the highest and best use of the land would be for rural subdivision purposes. Appellant's first witness, *Holmes*, emphasized the point we make when, in answer to a question as to the highest and best use of the property, he said: "I considered it to be woodland pasture suitable for grazing." He further downgraded this classification by saying that "I considered it to be below average for this general area."

Appellant's witness, *Houston* added that in his opinion the highest and best use of the property was "for cattle grazing purposes and for investment purposes," by which it is clear that he meant that it would be used for cattle grazing to procure some income therefrom while speculating on its appreciation in value. Appellant's third witness, *Osenbaugh,* was of the opinion that the highest and best use of the property was "for speculation, for buying the property, for a long-term capital gains situation of buying and holding the property until land around it is developed and when your development comes up to it, it will be more valuable land, and will sell for more."

Using their respective approaches, and in aiding the jury in arriving at the fair market value of the property, the following opinions were expressed: Clark for appellees, $400.00 per acre "average"; Houston for appellant, $200.00 per acre; Holmes for appellant, $190.00 per acre; and Osenbaugh, also for appellant a "range" between $150.00 and $200.00 per acre, which he increased to its maximum, $200.00.

The jury accepted appellees' witness, Clark's, valuation, finding $400.00 as the market value of the land taken.

■ There is no question as to the legal qualification of each of the witnesses to express an opinion as to the market value of the land in this suit, and no complaint is made based thereon. Each witness was qualified and many pages in the record are taken up with the parade of their qualifications before the jury. We express no opinion as to the weight to be given to the testimony of any of the witnesses, that being a matter exclusively for the jury. We remark in passing, however, that the differences of opinion might well stem from the lack of a common basis of evaluation, i. e., whether the land was best suited for rural subdivision purposes or grazing land. Sand and gravel, apples and oranges, ham and bacon all have certain traits in common, but it is common knowledge that one may or may not be worth more than the other at a particular time and place.

Many pages are taken up in the record and in the briefs to explain why appellees' property was not suitable for rural subdivision; but, as could be aptly pointed out, such was not and is not the determinative factor in the case, either before the jury or here. Presumably, if the jury had not so found, it would have taken the unanimous opinion of appellant's three witnesses over that of the lone expert testifying for the appellees. We do not consider it necessary to recount the testimony given, nor

890

the various factors entering into the question of whether or not the property was suitable for such a purpose as indicated by Clark. The fact remains is that he was qualified to testify, did so, and was believed. Whether or not the jury believed him because, as Osenbaugh said, "God is not making any more land," or for some other reason, is not the point.

█ Appellant complains that Clark is not credible because this is "landlocked" land in the sense that, while it has access, such is over an abandoned tram or logging railroad through property of others; that the topography, including numerous streams, etc., renders subdivision prohibitively expensive, etc. Clark was subjected to a thorough and rigorous cross examination, wherein the asserted weaknesses in his testimony were exposed; yet he remained firm in his opinion. Market value of property is of necessity a matter of opinion. 2 McCormick & Ray, Texas Law of Evidence, § 1422, p. 256, et seq., and cases therein cited. The triers of the facts, the jury in this instance, were not required to accept the opinions of the experts on either side of the controversy. If the opinions so expressed did not comport with the juror's ideas, they had a right to say so. Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62, 64 (1945).

The attack upon Clark's testimony goes to the weight to be given thereto, a question ordinarily within the exclusive province of the jury. State v. Haire, 334 S.W. 2d 488, 491 (Tex.Civ.App., 1960, error ref., n. r. e.).

█ Appellant attacks Clark's testimony contending that the so-called "comparables" upon which he based his opinion, at least in part, were not in fact or in law comparable. We recently had occasion to write upon this very point in another case involving the reservoir for Lake Livingston, Trinity River Authority of Texas v. Hutch-

ings, Trustee, et al., No. 7018, 437 S.W.2d 383, opinion released January 30, 1969. There, we laid down what, in our opinion, is the rule relating to the question of comparability. We do not find it necessary to repeat the summary there made. (p. 385). What was said in *Hutchings* applies here and the complaints with reference to the comparable sales, or lack of comparability, are overruled.

█ It is apparent from a review of the entire record in this case, including the others arising under substantially the same circumstances which have been brought to this court recently by the appellant, the principal difficulty which all appraisers face when seeking comparable sales in the area of Lake Livingston Dam is caused by the relatively small number of sales of *any* kind in the area. It appears from this record to be clear that, while values in the area generally have been rising rapidly, there have been relatively few sales which the parties can agree are "comparable". As we pointed out in *Hutchings*, supra, the trial court's initial determination that a prior sale is sufficiently similar to be considered comparable cannot be reviewed except to determine whether there has been an abuse of discretion. We adhere to that ruling here since we find no abuse of discretion.[1]

The absence of a number of sales in the immediate area of property identical to that involved in the case at the bar arises from no fault of appellees; and, it might be admitted, the construction of the dam and reservoir by appellant probably is one reason for the general increase in land values in the area. But, so holding, we do not reach the end result sought by appellant— an absolute rejection of the comparable sales used by Clark. See in this connection the opinion of this court in Trinity River Authority v. Chain, No. 7010, 437 S.W.2d 887, pp. 894–895, opinion released January 23, 1969, wherein a similar con-

1. Cf. Foley Bros. Dry Goods Co. v. Settegast, 133 S.W.2d 228 (Tex.Civ.App., 1939, writ ref.).

tention made by appellant was denied. See also our opinion in Trinity River Authority v. Harris, No. 7028, 439 S.W.2d 670, p. ——, this day handed down.

As was said by counsel for appellees in the brief filed herein, commenting upon our recent opinions in *Hutchings* and *Chain,* supra:

> "Clearly, the jury in the case [under submission], as in the two recent cases before this court, believed the highest and best use of the condemned property was its adaptibility [sic] for rural subdivision purposes * * *"

The jury did not pass, directly, upon the highest and best use of the land; but, having chosen to follow Clark, they must have done so by finding a value based thereon. It is not for us to decide the difference of opinion between the experts.[2]

■ Applying the tests which we have outlined hereinbefore, it cannot be said that there is no evidence to support the finding of market value. Since the weight to be given to the opinions of the several witnesses was for the jury, our review of the evidence fails to sustain appellant's point that the finding of the jury is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Points one and two are overruled.

■ The third point complains of the fact that the trial judge showed obvious bias in favor of appellees in various rulings "which taken together constitute such a showing of prejudice against the appellant as to constitute reversible error." Under this point, appellant contends that the trial judge, immediately after the morning recess on the second day of trial, went out into the audience and "fraternized" with the plaintiffs in the presence of the jury. With this as a predicate, appellant contends that the action of the trial court in overruling all of its objections and sustaining all of those made by appellees—in other words, a zero batting average—showed such obvious prejudice as to warrant our setting aside the judgment. We overrule this point.

As to the complaint of "fraternizing" with the individual plaintiffs, there is no record showing of any kind that any such event actually occurred, what was done, or what was said. There is a motion for mistrial found in the record followed by a "discussion off record" and the statement that the motion was overruled. There is no record proof, however, by bill of exception or otherwise, as to what went on. We are unwilling to ascribe error under these circumstances, if indeed we could find that there was ground for complaint. See: Price v. Callahan, 319 S.W.2d 347 (Tex. Civ.App., 1958, error ref., n. r. e.).

The action of the court in overruling appellant and sustaining appellees, *in each instance,* when no complaint is made that any single ruling of the court constituted error, discloses one thing only: Appellant was probably wrong each time or it would have made at least one such claimed incident the subject of a complaint. If no one of the ruling was erroneous, their combined effect could not be erroneous.

The third point is overruled.

The judgment of the trial court is affirmed.

2. See the discussion and authorities cited in City of Houston v. Raborn, 409 S.W. 2d 480, 481 (Tex.Civ.App., 1966, error ref. n.r.e.).