**TRINITY RIVER AUTHORITY of Texas,**
**Appellant,**

v.

**John W. HARRIS et al., Appellees.**

**No. 7028.**

Court of Civil Appeals of Texas.

Beaumont.

March 13, 1969.

Lloyd C. Martin, Huntsville, Alvis S. Ellisor, Cleveland, for appellant.

McClain & Harrell, Conroe, Robert F. Atkins, Coldspring, for appellees.

PARKER, Chief Justice.

This is an eminent domain case with trial to jury. In answer to the only issue submitted to the jury, it found the reasonable market value of the 764.14 acres of land condemned, exclusive of the minerals, when it was condemned by the Trinity River Authority of Texas on November 21, 1967 for reservoir purposes, was $365.00 per acre. On that basis, judgment was rendered for the defendants, John W. Harris and Florence H. Meyers, that they recover from the plaintiff, Trinity River Authority of Texas, the sum of $278,911.00, plus the additional sum of $7,641.40, in full payment for the damages or decrease in market value of the minerals owned by these defendants in accordance with the stipulation between the parties. The total of these two stated sums is $286,552.40.

Trinity River Authority has appealed and for convenience will be called "T.R. A.". The defendants in the trial court will be called "defendants", or the two defendants will be called "Harris".

Appellant has five points of error. Appellant has briefed the first three points of error together. This court will consider them in the same manner. They are:

"I.

"There is no evidence of probative value to support the jury finding to Special Issrue [sic] No. 1.

"II.

"There is insufficient evidence to support the jury finding to Special Issue No. 1.

"III.

"The trial court erred in permitting Appellees, over the objection of the Appellant, to introduce evidence of sales of various properties which were not comparable with the subject property."

The contentions of appellant in this case are very similar to the contentions of ap-

pellant in our No. 7010, Trinity River Authority of Texas v. Chain et al, 437 S.W.2d 887, and our No. 7018, Trinity River Authority of Texas v. Hutchings, Trustee, 437 S.W.2d 383. In all three suits, the contention of T.R.A. is that the highest and best use of the land being taken was for agricultural or grazing purposes with its witnesses seeking comparable sales on that basis. The contention of appellees in these suits is that the land taken had a highest and best use as property adaptable for rural subdivision purposes.

THE EVIDENCE: The residents of the City of Houston are exerting an appreciable influence on land value within 100 miles of Houston. Houston is one of the fastest growing cities in the country. Land around Houston is flat. Many people of Houston with good jobs and money want to buy a tract of land for a homesite, a retreat or for a second home, in a rolling country with streams of water and wooded land. Some commute to their business or employment in Houston. They have the money to buy. There is a strong and growing market for such lands. Likewise, the market price has greatly increased for several years. State highways from Houston go in a northerly direction to Conroe and Livingston, and are intersected by highways running east and west. Taxes are lower in the area of Conroe, Livingston, Coldspring and Huntsville than in Harris County. Demand is stronger than the supply for such lands for the reason that most of the land is owned by the National Forest, the paper companies, or lumber companies, and not available for market. Comparable sales are not abundant. Generally, the price of lands decreases with the distance from Houston. Scarcity of land in Harris County, coupled with high prices, force a potential buyer to go inland. Availability of lands is shrinking, for some one million acres of land is being taken for reservoirs from Lake Texhoma to Houston.

The land condemned is in this area described by appellees' witness, Clark, as being in rolling hills, except when crossing the Trinity River bottom, where some six miles are flat; but the rest of the land is beautiful rolling country with attractive timber with a few farms, but most of the land is wooded from Huntsville to Livingston, particularly beautiful during the springtime when the dog woods are in bloom.

The subject property consists of 764.14 acres of land in the northwestern portion of San Jacinto County, Texas, located on U.S. Highway 190, and is between Point Blank and Livingston, Texas, and west of the Trinity River. Livington is to the east about sixteen or seventeen miles; Coldspring is about seventeen miles southeast of the subject property; and Point Blank is about four miles west thereof. U.S. Highway 190, which is well-traveled, crosses the subject property, leaving perhaps sixty or seventy acres south of the road and approximately seven hundred acres north of the road. The subject property has 3,200 feet frontage on U.S. Highway 190. A county road leads from U.S. Highway 190 north through the subject property. It is a well-maintained, all-weather road. The tract of land is relatively flat, with the elevation running from about 105 to 115 feet, and it is drained by Mill Creek. There is no indication that the tract of land is subject to over-flow from the river, although that portion lying south of the road did not drain as well as the area north of the road. Rain water had a tendency to stand for several days in places following a heavy rain. Eighty per cent of the tract had river bottom hardwood, consisting of oak, gum, sycamore and other common river-bottom species. The timber was sold in 1960, and was cut and removed in 1965; however, the tract has second-growth pine and hardwood timber, mostly hardwood. There is a small lake in the upper portion of the tract, and also another one just north of U.S. Highway 190. There is an ever-flowing artesian well near the lake, supplying a tenant with running water. Except for the fences, the improvements on the property

are of no consequence. Adjoining is a National Forest. No shacks are near to detract from the attractiveness of the land.

One hundred to one hundred fifty acres of the property was in cultivation and had been for the past twenty years. It is seventy-nine miles from downtown Houston by way of U.S. 59 and Liberty Hill Road. Many photographs of scenes on the subject property are in evidence. They show Highway 190, the county road, the artesian well and attractive timber on each side of the highway and road. An aerial map shows trees for rural subdivision purposes—magnolia, oak, and other hardwoods and some pine. Photographs of attractive-appearing lakes and streams are in evidence.

The expert witnesses placed on the stand by Harris were Stuart F. Clark and J. W. Dinkins. Their qualifications were not challenged. Each used the market data approach, considering that the highest and best use of the subject property was for residential subdivisions, investments and some commercial sites along the roads. The expert witnesses for T.R.A. were T. A. Cauthen and Will S. Holmes. Cauthen considered the highest and best use for the subject property was farming and ranching; Holmes considered the highest and best use for said land was to grow timber and for use as pasture land. The opinions as to the market value of the surface of the subject property by the witnesses are tabulated below:

| WITNESS | PER ACRE VALUE | TOTAL VALUE |
|---|---|---|
| (1) Stuart F. Clark, for Harris | $400.00 | $305,656.00 for surface only |
| (2) J. W. Dinkins, for Harris | $350.00 | $267,449.00 for surface only |
| (3) T. A. Cauthen, for T.R.A. | $195.00 | $150,000.00 for surface only |
| (4) Will S. Holmes, for T.R.A. | | Improvements $987.00 Land $152,828.00 TOTAL $153,815.00 |

The jury found the surface only to be worth $365.00 per acre, or a total of $278,911.00. The ultimate issue of value was properly phrased and submitted to the jury. Considering the evidence only favorable to the jury finding in answer thereto, T.R.A.'s "no evidence" point is overruled. Considering the entire record, T.R.A.'s "insufficient evidence" point is overruled.

We now consider T.R.A.'s Point III. Of the numerous sales described by Clark and Dinkins, three were not objected to by T.R.A. To one comparable sale used by Clark, T.R.A. in no manner objected.

Clark testified as to a sale from First City National Bank of Houston to Gilpin Company, dated October 25, 1967, conveying 387.3 acres in San Jacinto County for $400.00 per acre. It is on a gravel road which intersected State Highway 59, located some four miles south of Shepherd, 15 miles south of Coldspring, 22 miles southeast of the Harris tract, and well away from the river. It is timbered land with about 15 feet difference in elevation between the highest and lowest point. It had second-growth hardwood with some scattering pine; no improvements were on the property except a fence on the east line. An old, narrow

road went through it, comparable to the dirt road through the Harris tract; no live streams, lakes or water on the tract. It was not as well shaped as the Harris tract.

The witness, Dinkins, used two comparables with no objection on the part of T.R.A. His first comparable was a sale by Alton Hues to Doyle Tow, dated February 12, 1968, of 306 acres for $425.00 per acre. 45 acres is in San Jacinto County and about 260 acres in Montgomery County. It was a little better tract than the subject property, being a bit closer to Houston. It had creek frontage of some 4,000 feet. It was unimproved land, wooded, but with no marketable timber. No highway parallels any portion of the property and it is a mile off a black-top county road. It was not fenced. At the time of the trial, it was being subdivided. It is sixteen miles north and east of Conroe and about 15 or 16 miles east of Willis. There is no community or grocery store close to it.

The second comparable used by Mr. Dinkins, which was not objected to by T.R.A., is a sale from C. L. Warren to R. N. McDonald, et al, of 154 acres in Walker County, located 17 miles west of the subject property; 15% open land with ½ mile frontage on Winters Bayou, rolling in elevation and fronting on a black-top county road; it had an old barn of no appreciable value and was fenced. To get to this tract from Coldspring, you would go to New Waverly and thence east. It is approximately 5 miles north of the Coldspring-New Waverly highway. The tract fronts approximately 500 feet on a blacktop road that turns north off the Coldspring-New Waverly highway. The subject tract was considered comparable due to the frontage on Winters Bayou and having open land with good access. It is some 8 miles from the San Jacinto County line. It sold on April 15, 1968 for $400.00 per acre.

The expert witnesses, Clark and Dinkins, were careful to go into the difference between the land condemned and the land in all comparable sales. The difference in viewpoint of Clark and Dinkins, witnesses for condemnees, and Cauthen and Holmes, witnesses for T.R.A., is shown by their testimony. An aerial photograph of the land involved in a comparable sale used by Cauthen, dated September 30, 1967, from Stephens to Gladden, shows a farm without trees and substantial farm improvements. It is a tract of 226 acres in Polk County. Some of the comparable sales used by the witnesses for Harris were closer to Houston than the condemned tract. In each comparable sale, these witnesses, Clark or Dinkins, compared and distinguished the features, good and bad, as to proximity to Houston, improvements, topography, trees, streams, lakes, and relative accessibility. If the land sold had better features, they made cash deductions in order to compare such sale with the value of the land being condemned. Harris' expert witnesses fully qualified themselves and stated they had full knowledge of sales in this area and knew the market value of lands in the area. It is seldom that two tracts of land are exactly alike. It is the opinion of the expert witnesses as to the market value of the property that provides the jury with a basis for its finding.

Justice Stephenson, in our No. 7018, Trinity River Authority v. Hutchings, Trustee, summarized Texas Decisions as to the question of comparability in these three sentences:

"(1) It is sufficient it can be shown as a predicate that the lands involved in prior sales are similar to those taken. (2) The trial court has great discretion in determining whether sales offered in evidence are comparable to the land being taken. (3) A trial court's decision that a prior sale is sufficiently similar to be considered comparable cannot be reviewed except to determine whether there has been an abuse of discretion."

■ The comparables used by Clark and Dinkins were not so dissimilar as to make them inadequate or inappropriate as a matter of law. City of Austin v. Cannizzo, 153

Tex. 324, 267 S.W.2d 808, 815, 816 (1954). There was no abuse of discretion on the part of the trial court as to these comparable sales. T.R.A.'s Point of Error III is overruled.

The foregoing is also considered in connection with our overruling T.R.A.'s Point of Error IV, particularly on objections to comparable sales.

### "IV.

"The trial court denied Appellant a fairly and impartially administered trial by consistently ruling against Appellant upon all points raised, which consistent action constituted a continuing comment upon the weight of the evidence."

The trial court ruled in favor of T.R.A. in several instances. The rulings (singly or together) were not comments on the weight of the evidence. T.R.A. admits in its brief, "Additionally, it is conceded that any one of the twenty-eight rulings, standing by itself, might be considered as being within the sound discretion of the Court." This Point of Error employs twenty-eight specific rulings of the court. T.R.A. complains of the judge's instruction to a witness to "Just answer the question, please," as being a comment on the weight of the evidence. It is not. Carefully considering all other rulings of the court as they occurred, we find them to be correct. T.R.A.'s Point of Error IV is overruled.

Appellant's Point of Error No. V is as follows:

### "V.

"The cumulative effect of the above errors amounted to a denial of Appellant's right to a fair trial and probably caused the rendition of the grossly excessive verdict of the jury."

The finding of the jury as to the market value of the subject property is $35.00 per acre less than the value placed thereon by Mr. Clark, and $15.00 per acre more than the value placed thereon by Mr. Dinkins.

In disposing of the other Points of Error, we found no error on the part of the trial court. It was a fair trial. When there are no errors, there can be no cumulative effect of errors. Southern Pacific Company v. Hubbard, 156 Tex. 525, 297 S.W.2d 120, 125 (1956).

T.R.A.'s Point V is without merit and is overruled.

Judgment of the trial court affirmed.