MARY'S OPINION HEADING 



 NO. 12-01-00050-CV



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


JOE WAYNE PRICE,
§
 APPEAL FROM THE 123RD

DEBORAH GAIL HOLCOMB

AND JAMES ALLEN PRICE,

APPELLANTS


V.
§
 JUDICIAL DISTRICT COURT OF

 


ARKANSAS FREIGHTWAYS, INC. N/B/A

AMERICAN FREIGHTWAYS, INC.,

APPELLEES
§
 PANOLA COUNTY, TEXAS

 

 This personal injury case arises out of a collision between a car and a tractor-trailer unit. 
Allen Price ("Allen" or "Appellant"), while riding in the trunk of the car, suffered injuries to his
spinal cord which resulted in his being paralyzed from the chest down. He and his parents, Joe
Wayne Price and Debra Holcomb ("parents" or "Appellants"), sued the owner of the tractor-trailer
unit, Arkansas Freightways, Inc. ("Freightways"). Following a jury trial, the trial court entered a take-nothing judgment. Allen and his parents raise five issues on appeal alleging the jury's negligence
findings were in error. We affirm.


Background


 The evidence at trial showed that between 10:30 and 11:00 p.m. the night of Tuesday, April
14, 1992, Robert Chancellor, seventeen ("Robert"), Allen, fifteen, and Shannon Price, thirteen
("Shannon"), left their respective homes in Robert's 1988 Beretta ("car"). They picked up Kelly
Capps, thirteen ("Kelly"), and Vicky Goodney, sixteen ("Vicky"). After riding around Carthage and
the surrounding environs for a couple of hours, they decided to buy some gasoline for the car at an
all-night convenience store. On the way to the convenience store, Allen, Kelly and Shannon crawled
into the car's trunk from the back seat, which folded down. They did so to hide their presence from
anyone who might see them. Vicky became the car's driver upon leaving the convenience store. She
headed southbound on State Highway 315 toward the community of Clayton. She stopped for a stop
sign at the intersection of State Highway 315 and Loop 236. As the car crossed the Loop, Shannon
crawled out of the trunk into the car's back seat. Kelly testified that she was about halfway out of the
trunk into the backseat when the car's "swerving" motion threw her back into the trunk against Allen.

 Vicky testified that she glimpsed a small animal dart across the road in front of her from right
to left. She said that she turned the car to the right and left the roadway, driving partially into the
grass. She stated that she turned the car back to the left and that it traveled diagonally into oncoming
traffic. She testified that she no longer had control of the car. She said that she let off of the gas
during this uncontrolled skid and did not put her foot on the brake because she had been taught that
to do so would lock them up and "set you into a further spin." Vicky indicated that the front of the
car was in the grassy area next to oncoming traffic with its rear on the improved shoulder when the
rear of the car was clipped by the second of two trailers being pulled by the northbound tractor-trailer
unit driven by Donald Marshall ("Marshall"). Allen and Kelly were ejected from the trunk by the
impact of the collision. Kelly suffered minor cuts and bruises. Allen suffered a spinal cord injury
which paralyzed his body from the chest down. Vicky, Robert and Shannon, in the passenger
compartment of the car, were uninjured.

 Allen and his parents sued Freightways, alleging that the negligence of Marshall had caused
Allen's injuries. At the conclusion of the trial, the court instructed the jury on "negligence per se,"
"negligence," "ordinary care," "proximate cause," "sole proximate cause" and "emergency." The
court's charge contained six questions, the first of which read as follows:


 Question: 1 


 Did the negligence, if any, of the persons named below proximately cause the occurrence or injuries
in question?

 Answer "Yes" or "No" for each of the following:


 a. Don Marshall, driver for Arkansas Freightways, Inc. No 

 b. James Allen Price Yes 



 The trial court then rendered a take-nothing judgment against Allen and his parents based on
the jury's answer to question number one. This appeal followed.

 

Negligence Leading to the Collision


 In their fifth issue, Allen and his parents contend that there is neither legally nor factually
sufficient evidence to support the jury's finding that Marshall was not negligent for the collision
which led to Allen's injuries.

 Negligence has been defined as the failure to do that which a person of ordinary prudence
would have done under the same or similar circumstances. Great Atlantic & Pacific Tea Co. v.
Evans, 142 Tex. 1, 7, 175 S.W.2d 249, 251 (1943); Sisters of Charity v. Gobert, 992 S.W.2d 25, 28
(Tex. App.-Houston [1st Dist.] 1997, no writ). Doing that which a person of ordinary prudence
would not have done under the same or similar circumstances also constitutes negligence. Sisters of
Charity v. Gobert, 992 S.W.2d at 28. The elements of negligence are: (1) duty on the part of one
person to another, (2) breach of that legal duty, and (3) injury to the person to whom the duty is owed
as a proximate result of the breach. City of Gladewater v. Pike, 727 S.W.2d 514, 517 (Tex. 1987). 
Proximate cause requires both cause-in-fact and foreseeability. Id. Cause-in-fact contemplates that
the act or omission was a substantial factor in bringing about the injury and, without it, harm would
not have occurred. Midkiff v. Hines, 866 S.W.2d 328, 333 (Tex. App.-Houston [1st Dist.] 1993, no
writ). Foreseeability means that the actor, as a person of ordinary intelligence, should have
anticipated the dangers that his negligent act created for others. Id.

Legal Sufficiency

 In reviewing a legal sufficiency challenge, we consider only the evidence which tends to
support the jury's finding and disregard all contrary evidence and inferences. Wal-Mart Stores, Inc.
v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998). If more than a scintilla of evidence favors the jury's
finding, any legal sufficiency challenge must fail. Minnesota Mining and Mfg. Co. v. Nishika Ltd.,
953 S.W.2d 733, 738 (Tex. 1997).

 We begin our analysis of the negligence which was the proximate cause of the collision by
noting the following four uncontroverted facts from the record before us:

 (1) Vicky lost control of the car.

 (2) The car of which Vicky lost control crossed the center line in front of the Freightways
tractor-trailer.

 (3) The path of an out-of-control vehicle is unforeseeable.

 (4) Lives could have been lost if the car and the tractor-trailer had collided head-on.

 Allen and his parents contend that Marshall, as the driver of Freightways' tractor-trailer, was
negligent at two junctures in the chain of events leading to the collision: (1) when he first saw the car
being driven erratically while it was 900 feet away from him, and (2) when the car crossed the center
line approximately 600 feet away from him. 

 John Painter testified for Freightways as its accident reconstruction expert, and stated that he
had examined all of the evidence and depositions presented at trial. He further stated that he had
purchased a 1989 Beretta to see how it would react under test conditions. Additionally, he testified
that he applied scientific laws and methods to draw his conclusions as to what had happened during
the chain of events leading to the collision. Painter asserted that Vicky began erratic movements by
turning the car to the left across the center line before then moving back into her lane, at which time
she lost control of the car. He based his reconstruction of what happened on Shannon Price's
deposition testimony that Vicky first turned the car to the left when the erratic movements began. 
Painter maintained that it was unreasonable to expect a reasonable truck driver to apply his brakes
at that particular time. He testified that Marshall had no way of knowing what the car was going to
do. He stated that it would have been reasonable to assume that the car was making a left-hand turn
when it first came into Marshall's lane. He believed that it was unrealistic for the car to be perceived
as a threat to Marshall's well-being at that time. He stated that when the vehicle returned to its own
lane of traffic, there was no reason for Marshall to stop the tractor-trailer or even to brake. Painter
testified that Marshall could not have known that the driver of the vehicle would lose control after
it returned to its lane of traffic and come back across the center line. He did not believe that Marshall
had acted unreasonably under the circumstances.

 In regards to Marshall's actions the second time the car crossed the center line, Painter
testified that if Marshall had tried to brake suddenly, he could have been in danger of losing control
of the tractor-trailer rig. The truck could have traveled sideways until it covered the entire roadway. 
He stated that Marshall veered to the left after he saw the car, which was obviously out-of-control,
move into his lane. He further explained that the commercial manual for drivers in Texas states that
brakes should not be applied while attempting to steer the vehicle in order to avoid an emergency
situation in the roadway ahead; to do so would make the vehicle unstable. Additionally, Painter
contended that when a driver cannot effectively brake to avoid a possible head-on collision, he should
remove his foot from the brake and aim for an opening in the roadway ahead. He opined that this is
what Marshall attempted to do when he saw the car approaching his tractor-trailer rig.

 Because there is more than a scintilla of evidence supporting the jury's finding, we hold that
the evidence is legally sufficient to show that Marshall was not negligent in the operation of his
vehicle at the time of the collision. 

Factual Sufficiency

 When reviewing a jury verdict to determine the factual sufficiency of the evidence, a court of
appeals must consider and weigh all of the evidence, and should set aside the verdict only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v. Bain,
709 S.W.2d 175, 176 (Tex. 1986). This court is not a factfinder and may not pass on the credibility
of the witnesses or substitute our judgment for that of the trier of fact. Clancy v. Zale Corp., 705
S.W.2d 820, 826 (Tex. App.-Dallas 1986, writ ref'd n.r.e.). Findings of fact are the exclusive
province of the jury and/or trial court. Bellefonte Underwriters Ins. Co. v. Brown, 704 S.W.2d 742,
744 (Tex. 1986). Accordingly, if there is sufficient competent evidence of probative force to support
the finding, it must be sustained. Beall v. Ditmore, 867 S.W.2d 791, 795-96 (Tex. App.-El Paso
1993, writ denied). Where there is conflicting evidence, the jury's verdict on such matters is
generally regarded as conclusive. Id. at 796. And a jury is entitled to accept all or part of an expert
witness's testimony. Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345, 346 (1948);
see also Trinity River Auth. v McMurrey, 439 S.W.2d 887, 890 (Tex. Civ. App.-Beaumont 1969,
no writ). 

 To support their position that Marshall's negligence caused Allen's injuries, Allen and his
parents produced two accident reconstruction witnesses, Joe Montgomery and George Green, to
describe what actions they believed a reasonably prudent truck driver would have taken. Each expert
witness explained that he had read Marshall's statements made on the day of the collision, Marshall's
deposition testimony, the testimony of the five teenagers in the car, the deposition testimony of the
other experts to testify at trial, and the accident report of the department of public safety officer who
investigated the accident. They also viewed the pictures taken of the roadway after the accident, and
the pictures taken of the car and tractor-trailer rig after the accident. Each expert stated that he
applied scientific laws and methods to reach his conclusions as to what actions Marshall should have
taken before the collision.

 The testimony in the record shows that Marshall was traveling at forty-five miles per hour
when he first saw Vicky's car moving erratically approximately 900 feet in front of him. Marshall
explained that he had down-geared in anticipation of the stop sign at the intersection which Vicky had
just driven through. Marshall believed that he was going forty-five miles an hour when his second
trailer impacted the rear of the car. Green testified that a reasonable, prudent truck driver in this
situation, hauling a heavy load, "better slow that truck down to twenty miles per hour or even stop
if there's any question in [his] mind about what the driver of that vehicle is ultimately going to do." 
And Montgomery opined that "[a] reasonable and prudent driver in my mind, when he sees an erratic
movement to the right, at least starts to slow down, at least becomes alerted. And when that car starts
to come back to the left, you don't have to wait for it to get to the center line to react."

 In this case, we can infer that the jury accepted Painter's reconstruction of events when it
determined that Marshall did not act unreasonably when he first saw the car being driven erratically. 
This determination is not against the great weight and preponderance of the evidence, and is therefore
factually sufficient to support the jury's finding of no negligence on the part of Marshall. 

 We next turn to the evidence and expert witness testimony concerning Marshall's actions
when the car crossed the center line out-of-control. Green testified that because Marshall was
traveling at forty-five miles an hour, he could have stopped the truck within 160 feet after he saw the
car moving into his lane. Green opined that that is what a reasonable truck driver would have done. 
Montgomery testified that if Marshall had moved to the left earlier than he actually did, there would
have been no collision at all. He also asserted that Marshall should have been braking when he
steered to the left.

 Considering that no expert controverted the fact that no one could reasonably anticipate the
path of the out-of-control car, the jury's determination that Marshall acted reasonably under the
circumstances is not against the great weight and preponderance of the evidence, and is therefore
factually sufficient to support a no-negligence finding as to Marshall. We overrule Appellants' issue
five.


Negligence Leading to Allen's Injuries


 In their second, third and fourth issues, Appellants contend that there is neither legally nor
factually sufficient evidence to support the jury's finding that Allen's negligence caused his injuries. 
We have previously defined negligence. Duty, as part of negligence, can be the obligation to conform
to a particular standard of conduct, vis-á-vis, others in society. See Rodriguez v. Moerbe, 963 S.W.2d
808, 816 (Tex. App.-San Antonio 1998, writ denied). A person has a general duty to look out for his
own safety. Woodard v. Marathon LeTourneau Co., 570 S.W.2d 552, 557 (Tex. Civ. App.-Corpus
Christi 1978, writ ref'd n.r.e.). A person riding in an automobile owes the duty of ordinary care to
avoid injury. Garcia v. Moncada, 127 Tex. 453, 456, 94 S.W.2d 123, 124 (1936). A plaintiff who
breaches the general duty of care to exercise ordinary care for one's own safety is contributorily
negligent. See Jackson v. Associated Developers of Lubbock, 581 S.W.2d 208, 211 (Tex. Civ.
App.-Amarillo 1979, writ ref'd n.r.e.).

Legal Sufficiency

 Dr. Harry Smith testified as both an engineer and a physician on behalf of Freightways. He
told the jury that Allen was negligent when he rode in the car's trunk while it was moving. He
explained that the designated seating area in a car is a protected area by design. He stated that there
are restraints and sidewalls with padding for the passenger compartment that are designed to help
mitigate or overcome forces in a collision. Painter also testified that the trunk is designed as a crash
barrier to protect the passenger compartment from rear-end collisions. He explained that the trunk
is made to compress and absorb the energy of a rear-end collision, thus protecting the passengers in
the rigid passenger compartment. He opined that an individual who chooses to ride in a vehicle
outside the protections engineered and designed into the passenger compartment is taking a
"considerable chance." Green, who testified that he had been an accident reconstruction expert for
twenty-eight years, told the jury that this was the first accident he had seen or investigated where a
live person had been riding in the trunk of a car. James Nash, a physician for over twenty-five years,
testified that he had never treated anyone for injuries suffered while riding in a trunk before this
accident. 

 Smith presented evidence to the jury that Allen's injuries would not have occurred but for the
fact that he was riding in the trunk. He emphasized that none of the teenagers in the car's passenger
compartment suffered injuries as a result of the collision at issue. Allen himself told the jury that he
knew before the accident occurred that the trunk of a car was not designed to ride in. He further
testified that he had never ridden in a trunk before. As a fifteen-year-old, Allen is held to an adult
standard of exercising ordinary care. See Rudes v. Gottschalk, 159 Tex. 552, 557, 324 S.W.2d 201,
205 (1959). We hold that there is more than a scintilla of evidence to support the jury's finding that
Allen's negligence caused his injuries.

Factual Sufficiency

 Montgomery could not exclude the potential of harm if Allen had been seated elsewhere in
the car. And Greene testified that he could not agree that if Allen had not been in the trunk, he
probably would not have suffered such grievous injuries. But because of the previously discussed
evidence, we hold that the jury's finding that Allen was negligent is not against the great weight and
preponderance of the evidence. Accordingly, we overrule issues two, three and four.


The Submission of Allen's Negligence to the Jury

 In their first issue, Allen and his parents maintain that the trial court erred when it submitted
Allen's alleged negligence to the jury. They cite as authority Kerby v. Abilene Christian College, 503
S.W.2d 526 (Tex. 1973). In Kerby, the driver of a linen delivery truck with an open sliding door had
been struck in an intersection by a school bus. Id. at 527. The supreme court distinguished negligence
contributing to the accident and negligence contributing to the damages sustained. Id. at 528. And
in 1992, it explained and expanded upon Kerby in Elbaor v. Smith, 845 S.W.2d 240 (Tex. 1992), by
stating that "the trial court should have accounted for any increase in injury caused by the plaintiff
driving with the door open through a mitigation of damages question, and not one of contributory
negligence." Id. at 245. Also in Elbaor, the court stated that "In Kerby, there would have been a
wreck, and a lawsuit, even if the plaintiff had kept the door of his truck closed." The supreme court
concluded that submitting the driver of the delivery truck in the negligence question was error. Kerby
is clearly analogous to the case before us. At trial, it was undisputed that Allen did not contribute in
any way to the collision. There would have been a wreck, and possibly a lawsuit, even if Allen had
not been riding in the trunk. Consequently, the trial court erred when it included Allen in a question
which asked the jury whose negligence caused the occurrence. 

Harm Analysis

 Appellants argue that the trial court's jury charge error resulted in reversible error under Rule 
44 of the Rules of Appellate Procedure, which provides the following:


 44.1 Reversible Error in Civil Cases

 (a) Standard for Reversible Error. No judgment may be reversed on appeal on the ground that
the trial court made an error of law unless the court of appeals concludes that the error complained of:

 (1) probably caused the rendition of an improper judgment; . . .


Tex. R. App. P. 44.1(a).

 In order to determine whether an error in the jury charge is harmful, an appellate court must
consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. See
Island Recreational Dev. Co. v. Republic of Tex. Sav. Ass'n, 710 S.W.2d 551, 555 (Tex. 1986). The
submission must be considered as a whole to determine whether the error was prejudicial. See Turk
v. Robles, 810 S.W.2d 755, 759 (Tex. App.-Houston [1st Dist.] 1991, writ denied). Under the
harmless error rule, Appellants must persuasively demonstrate that it has suffered harm from the
submission of the defective issue. See Nacol v. McNutt, 797 S.W.2d 153, 156 (Tex. App. - Houston
[14th Dist.] 1990, writ denied). Appellants have not done so here.

 In Appellants' appellate brief, the only discussion of harm comes almost as a side bar comment
to their argument pertaining to the impropriety of the submission. Specifically, Appellants opine that,
"Here, it's clear, the trial court's inclusion of the term 'or injuries' was clearly erroneous, misled the
jury, and was calculated to - and did - result in an improper judgment." We recognize the possibility
that this is so. However, we are not privy to the jury's thought processes during deliberations, and a
possibility is not a sufficient showing of harm under Rule 44.1(a)(1). See Nacol, 797 S.W.2d at 156. 
Furthermore, Appellants fail to direct us to the specific testimony and evidence that caused the
improper verdict. Additionally, we note that there was no evidence presented during trial that Allen
was responsible for the collision. All of the evidence presented by both sides blamed either Marshall
or Vicky for the collision. The jury argument by each side focused on explaining how "negligence,"
"negligence per se," "ordinary care," and "proximate cause" as it related to the collision applied to
either Marshall or Vicky. Freightways argued that Vicky was the "sole proximate cause" of the
collision. Neither side argued that Allen had any responsibility for the collision itself.

 Freightways did contend in its closing argument that Allen was negligent for being in the trunk
during the collision. They argued that this negligence caused his injuries. Allen now maintains that
the jury may have been confused in its answer by attributing some of Vicky's negligence in causing
the collision to himself. But when we examine the evidence and all aspects of the jury charge,
including closing arguments by counsel, we cannot conclude that the jury was confused about the
distinction between negligence leading to the collision and negligence leading to injuries. See Kerby,
503 S.W.2d at 528. We hold, therefore, that the trial court's error in submitting negligence leading
to the occurrence and negligence leading to the injuries in the same jury question is, under the
distinctive circumstances of this case, harmless. Accordingly, we overrule Appellants' issue one.

 The judgment of the trial court is affirmed.

 

 

 JIM WORTHEN 

 Justice

Opinion delivered May 22, 2002.

Panel consisted of Worthen, J., and Griffith, J.

















(DO NOT PUBLISH)