## CASEY v. WATTS et al.

### No. 2090.

·Court of Civil Appeals of Texas. Waco.

June 8, 1939.

Rehearing Denied July 6, 1939.

S. J. T. Smith, of Waco, for appellant.

Jas. R. Jenkins and N. B. Brown, both of Waco, for appellees.

GEORGE, Justice.

This is a suit to recover on a $1,350 vendor's lien note against M. B. Barnett and Floyd Casey, instituted by Mrs. Sarah J. (Graves) Watts and husband and Mrs. Annie J. Sallee, a feme sole. The trial court rendered judgment against Barnett and Casey, jointly and severally, for the amount due on the note, including principal, interest and attorney's fees, and $51.70 insurance premiums paid by Mrs. Watts and Mrs. Sallee, under provisions of the deed of trust, together with interest thereon, and costs of suit, and rendered judgment in favor of Floyd Casey against M. B. Barnett on a $700 second vendor's lien note. Floyd Casey alone appeals from the judgment.

N. L. Thorn and wife, on May 15, 1925, conveyed the house and lot in controversy to Charles Martin Smith by warranty deed and retained therein vendor's lien to secure payment of the $1,350 purchase money note due May 15, 1930. Smith and wife at the time also executed a deed of trust on the house and lot to Floyd Casey, trustee, containing the usual insurance provisions. N. L. Thorn and wife assigned the note and liens to Mrs. Sarah Graves (now Mrs. Watts) and Mrs. Sallee. Charles Martin Smith and wife thereafter conveyed the property to Floyd Casey subject to the $1,350 indebtedness. Floyd Casey, on June 3, 1929, conveyed the property to M. B. Barnett by warranty deed, in consideration, among other things, of Barnett assuming and promising to pay the $1,350 note and executing and delivering to Casey a second $700 vendor's lien note and retained therein vendor's lien to secure payment of both notes. Floyd Casey, on June 5, 1929, signed and delivered to M. B. Barnett a letter, reading as follows: "Referring to the place that I have sold you on which there is an outstanding note of $1,350.00, held by Mrs. Sarah J. Graves and maturing in 1930, will say that at the maturity of this note I agree to take up this note and have it rearranged so that the payments will not exceed $25.00 per month including interest." Barnett and his family are now and have been at all times since June 5, 1929, occupying and using the property as their homestead. Barnett has not only not made or offered to make any payments on the principal of either note but he has not been in a financial position to do so. Appellees accepted Barnett's promise to pay the $1,350 indebtedness held by them and looked only to him for payment thereof until on or about October 2, 1932. Casey is now and was at all times involved one of the principal stockholders of the Master Petroleum Company.

M. B. Barnett testified that he would not have purchased the property if Mr. Casey had not agreed to take up the note when it became due; that he asked Casey to take up the note about three months after it became due; that he did not take it up; that he did not say anything to Casey about taking up the obligation until after he had lost his job with the Master Petroleum Company; that he went to Casey and told him that he was out of work and that if he would put him on a truck that he would let the entire salary apply on the note but that they did not make a trade; that he talked to Mr. Casey prior to the closing of the trade in regard to the $1,350 note that was outstanding on the place and told him that he could not take the place with the note hanging over it, subject to his taking it up, because it was too much and that his salary would not justify it; that he told Casey that anything might happen in the length of time before the note came due; that he knew Mr. Casey's word was good but that he wanted the matter drawn up in writing, and that Mr. Casey turned around to his stenographer and dictated the letter to her and signed it when she had written it and handed it to him. Floyd Casey testified that he sent the deed over to the plant executed and that Barnett came in and said that he had read the deed and that he could not pay the big note when it came due, and that he told Barnett, "Well, we won't have any trouble when you make your payments to get that extended," and that Barnett asked him to write him a letter to that effect and that he wrote the letter in question; that nothing was said about the letter until after the deed was written and delivered; that Mr. Barnett never did come and ask him to refinance the note and cut it up into $25 payments, and that the holders of the note, acting through Judge Jenkins, never asked him to refinance the note and cut it up into $25 payments; that he did not agree to assume or to pay the note. Judge Jenkins testified that he held the note; that he did not want the note cut up in pay-

ments and that he would not have been interested in having it cut up in payments of $25 per month, and that he did not ask Mr. Casey to refinance the note; that he was insisting upon payment of the note in full by Mr. Casey; that he and his clients first discovered the existence of the letter on or about October 2, 1932. Personal judgment was rendered by the trial court against Casey on the theory that Casey, for a valuable consideration moving to him from Barnett, assumed and agreed to pay to appellees the $1,350 debt of Charles Martin Smith and M. B. Barnett, and that he, by such agreement, made the debt his own and thereby became one of the principal debtors to appellees.

Appellant contends that the trial court erred in holding that he assumed the payment of the indebtedness evidenced by the $1,350 note, together with the amounts paid as insurance premiums, and in rendering judgment against him for such amounts.

■ Appellees were not entitled to any personal judgment against Casey on the indebtedness until they had established, (1) the fact that Casey and Barnett had intended to make the contractual provision in question primarily for the benefit of appellees, and (2) that Casey had promised to pay the indebtedness to appellees. H. F. Banker v. E. H. Breaux, Tex.Com.App., 128 S.W.2d 23.

■■ The interesting question presented is whether, considering the deed and letter as constituting one contract and reading same in the light of the surrounding circumstances, an intent to confer on the holders of the $1,350 note a right to proceed directly against Floyd Casey can be discerned. The intention of the parties is the paramount and controlling consideration in determining whether the provision contained in the letter was inserted for the benefit of Barnett or the benefit of the holders of the note. When this intention is ascertained, that construction of the contract which carries the intention into effect governs. Gibbs v. Barkley, Tex. Com.App., 242 S.W. 462, pars. 1 and 2; Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W.2d 442, 443; Byram Lumber & Supply Co. v. Page, 109 Conn. 256, 146 A. 293. Floyd Casey, on June 3, 1929, owned the property subject to the superior title and lien securing payment of the $1,350 indebtedness. He was not in anywise personally liable for its payment. On that day he conveyed the property to Barnett

in consideration of Barnett paying $2,100 therefor in the following manner, to-wit: $50 cash, assuming the $1,350 indebtedness, and executing and delivering to Casey a $700 note payable in monthly installments of $25 each. Casey could have conveyed this property to Barnett subject to the $1,350 indebtedness, yet he elected to require Barnett to bind himself to pay such indebtedness to the holders thereof, and in the deed retained a lien on the property to secure the payment of both indebtednesses, the one due the holders of the $1,350 note and the $700 due him. The assumption of the $1,350 indebtedness constituted a part of the purchase price of the property and was inserted for the benefit of the holders of such indebtedness and it is certain from an examination of the instruments that it was the intention of the parties at the time that Barnett should assume the $1,350 indebtedness and become primarily liable thereon. The assumption of the $1,350 debt, as a part of the consideration for the conveyance to him of the property, created a primary obligation on his part, and when the holders accepted his promise to pay the indebtedness, he became bound to the same extent as if he had executed and delivered to them his written obligation to pay such indebtedness. Hill v. Hoeldtke, 104 Tex. 594, 142 S.W. 871, 40 L.R.A.,N.S., 672; Chapman v. Crichet, 127 Tex. 590, 95 S.W.2d 360, 96 S.W.2d 64; Wilson v. J. W. Crowdus Drug Co., Tex. Com.App., 222 S.W. 223.

■ The testimony, surrounding circumstances and the language used in the contract on the other hand unequivocally indicate that the provision thereof contained in the letter was inserted for the sole protection of Barnett and primarily for his benefit and repel the inference that Casey and Barnett executed the contract with the intent that Casey should assume a direct obligation to the holders of the $1,350 indebtedness. Barnett at the time was desirous of buying the property for a home on the terms offered and was willing to obligate himself to pay the full amount of the purchase price provided he could arrange for monthly payments in such a sum as he could pay. He knew he could not pay the note on maturity. He was not concerned about obtaining for the holders thereof the right to proceed thereon directly against Casey. What he wanted at that time was assurance from Casey that in the event payment of the $1,350 in-

debtedness was required on the due date that Casey would either purchase the note and lien or cause same to be purchased and that same would be refinanced and made payable in monthly installments of principal and interest not exceeding $25 per month so that he could meet same as they matured. That is the object they had in contemplation. Thus, it is manifest from the language used, when same is interpreted in the light of the attendant facts, that it was not the purpose of Barnett in obtaining the promise from Casey to make a gift to the appellees or to confer upon them a right against Casey, but to secure for himself the aid of Casey in the event of need. Cannon Ball Motor Freight Lines v. Grasso, Tex.Civ.App., 59 S.W.2d 337, par. 13; Hardin Lumber Co. v. Shepherd, Tex.Civ.App., 40 S.W.2d 215, pars. 2, 3 and 4; House v. Houston Waterworks Co., 88 Tex. 233, 31 S.W. 179, 28 L.R.A. 532; Gulf, C. & S. F. Ry. Co. v. Levy, 59 Tex. 563, 46 Am.Rep. 278; Nalle & Co. v. Costley, Tex.Civ.App., 174 S.W. 625; 10 Tex. Jur. §§ 280-282, pp. 483; Restatement of the Law of Contracts, Vol. 1, § 133; § 147, p. 176; § (a) of part one, p. 151; § 140, pp. 165, 166.

■ The contractual provision construed in the case of Banker v. Breaux, Tex. Com.App., 128 S.W.2d 23, 24, reads as follows: "It is expressly understood between the parties hereto that there is an outstanding indebtedness against the property hereinabove described, amounting to the sum of $1,370.00 which the grantors herein agree to pay as it matures; upon failure to do so, the grantees herein are given the right to pay same, and payments so made shall apply on the note herein given as part of the consideration."

The court, speaking through Judge Harvey, said that the provision in question should be interpreted in the light of the attendant circumstances to ascertain the intention of the parties in making such provision; that it was plain that the terms of the first clause in the provision imported an unconditional promise on the part of the Bankers to pay the outstanding indebtedness to Breaux; that it was proper to look to the last clause, the entire contract and the surrounding circumstances to determine for whose benefit that unconditional promise was made; and that before a third party could enforce such a contractual provision it was encumbent upon him to prove that such provision was made for his benefit. That decision recognizes the rule that a third person may sue to enforce a contractual provision made for his benefit, and establishes the test for determining when such a promise is made for the benefit of the third party. That test is, for whose benefit primarily was the promise made?

It should be noted that appellant Casey did not agree to pay any indebtedness at any time to appellees but only agreed to take up—purchase—the $1,350 indebtedness and its lien and refinance same upon certain terms and conditions; that appellees have not offered to assign and transfer such indebtedness and lien to appellant with or without recourse on them, and that Barnett failed in his undertaking long prior to October 2, 1932.

■ There is another reason why appellees were not entitled to recover any personal judgment against appellant Casey, and that is because they do not now and have never had any higher or better rights in the matter than Barnett. The undisputed evidence shows that Barnett has never paid or offered to pay unconditionally any amount on the principal indebtedness of either note, and that he has never been in a financial position to perform or tender performance of the return promise made by him to Casey, which was the consideration for Casey's promise. Norton v. W. L. McAtee & Sons, Tex.Com.App., 16 S.W.2d 517; Dickson v. Day, Tex.Civ. App., 275 S.W. 307; Hill v. Hoeldtke, 54 Tex.Civ.App. 201, 117 S.W. 217; Heath v. Coreth, 11 Tex.Civ.App. 91, 32 S.W. 56; 10 Tex.Jur. § 281, p. 485; Restatement of the Law of Contracts, Vol. 1, § 140, p. 165.

The judgment of the trial court in so far as same decrees judgment in appellees' favor against M. B. Barnett on the $1,350 vendor's lien note, including principal, interest and attorney's fees and insurance premiums paid by appellees, and judgment in favor of Floyd Casey against M. B. Barnett on the $700 note, and awards foreclosure of first lien on the property in favor of appellees against M. B. Barnett and Floyd Casey to secure the payment of the full judgment rendered in favor of appellees and foreclosure of lien in favor of Floyd Casey, subject only to the lien in favor of appellees, is affirmed, but the judgment in so far as same decrees a personal judgment against Floyd Casey is reversed and judgment is here rendered that appellees take nothing as against appellant Floyd Casey.