Earnest G. CARTER et al., Appellants,

v.

Arlie V. HARRISON et al., Appellees.

No. 17054.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 7, 1969.

Rehearing Denied Dec. 5, 1969.

Cantey, Hanger, Gooch, Cravens & Munn, Herrick & Glazner, and John W. Herrick, Fort Worth, for appellants.

Crumley, Murphy & Shrull, and William M. Murphy, Fort Worth, for appellees.

## OPINION

LANGDON, Justice.

This is a suit for monetary damages initiated by the plaintiff, Earnest G. Carter, against Blackie Watson Erectors & Riggers, Inc., and Arlie V. Harrison, its employee, for injuries sustained by him when a motor crane, belonging to the Watson Company and operated by Harrison, fell over while plaintiff was riding on the load of the crane. Houston Fire and Casualty Insurance Company intervened to recover benefits paid by it to the plaintiff under a workmen's compensation insurance policy. The case was tried to a jury. It found negligence on the part of Harrison for the manner in which he operated the crane and that such negligence was a proximate cause of the occurrence in question. In its answers to Special Issues Nos. 10 and 11, respectively, the jury found negligence on the part of the plaintiff in riding the "platform" load on the occasion in question and that such negligence was a proximate cause of the occurrence in question.

The plaintiff and intervenor filed a motion to disregard the answers to the contributory negligence and proximate cause issues and thereafter a motion for judgment on the verdict. The court overruled these motions and entered a take nothing judgment in favor of the defendants.

The appellants on appeal contend that the court erred in failing to sustain the motion to disregard the jury's answer to Special Issue No. 11 and to enter judgment for plaintiff notwithstanding the verdict. That the jury's response to Special Issue No. 11 has no support in the evidence; there was no evidence of probative force to sustain it; that such jury finding is against the overwhelming weight and preponderance of the evidence.

We affirm.

The appellants make no complaint concerning the jury's finding of negligence on the part of the plaintiff. The appeal is based solely upon the jury's finding that such negligence was a proximate cause of the occurrence in question. It is argued that the plaintiff's act of riding the load could not have been a proximate cause of the occurrence in question because the two essential ingredients of proximate cause, i. e., foreseeability and cause in fact, are absolutely absent. In presenting its argument appellants urge that the falling or tipping over of the crane was the "occurrence in question" rather than the injuries sustained by the plaintiff.

The evidence in the case is summarized as follows:

On July 10, 1965, the plaintiff, an iron worker, was employed by Robert F. McCaslin. The latter was under contract with Gifford-Hill to dismantle a gravel shaker and platform to make way for the erection of a new structure. In order to complete his work under the contract, McCaslin leased a crane (35 ton capacity and a 90 foot boom) with an operator (Harrison) from the defendant, Watson. McCaslin explained to Harrison the work to be accomplished. The crane was placed about 10 to 12 feet away from the 45 foot structure which was to be dismantled. The crane's outriggers were deployed. Harrison, with the aid of "flagging" by either McCaslin or the latter's foreman, began to lower various pieces from the top of the structure to the ground. Before commencing this work Arlie Harrison was told where on the ground the pieces were to be placed. After Harrison had taken down several 500 pound pieces, he picked up a load consisting of a gravel shaker weighing approximately 7,000 pounds. In doing this he lowered the shaker in the accepted safe and customary manner as follows: with the boom at about a 20 degree angle,

the hook was lowered. The shaker was affixed thereto. The shaker then was picked up by raising the boom to an angle of about 10 to 15 degrees. The crane was swung around about 45 degrees in a counterclockwise manner so that the load would clear the structure. Clear of the structure the operator, with the boom still at a 10 to 15 degree angle, began lowering the shaker. When the crane had swung around about 135 degrees, the load had been lowered to about 12 to 15 feet from the ground. Harrison then started increasing the angle of the boom itself until the load was about 60 to 65 feet from the crane. The technique employed on this occasion with the 7,000 pound load followed good safety procedure. The occurrence in question took place during the lowering of a subsequent load consisting of a platform 10 to 12 feet high and weighing approximately 9,000 pounds. An expert witness, with the aid of a crane capacity manual supplied by the manufacturer, testified that the weight of the load makes a difference in the capacity of the crane. This witness in reference to a 9,000 pound load testified that if an operator increased his boom angle from 10 to 15 degrees to a 45 degree angle before lowering it to the ground, the crane would "tip over." What the witness said with reference to the 9,000 pound load was not made with reference to the 7,000 pound load which was lowered without mishap. There was a substantial difference between the 7,000 pound load Harrison lowered from the structure and the second load (9,000 pounds) he was lowering when the accident happened.

After McCaslin signalled Harrison to hook onto the platform (9,000 pound load) he told the plaintiff, his employee, to stay on the platform and ride the load down and unhook it and to keep the platform off the boom as it was being lowered. With the plaintiff on the load, Harrison lifted it by raising the boom up to a 10 to 15 degree angle. When the boom had reached the 15 degree angle, McCaslin flagged Harrison to swing the crane around to clear the structure. When the crane had cleared the structure, instead of lowering the load as before, Harrison started increasing the angle of the boom (or in the parlance of the industry, "began booming out"). The rig turned over and the plaintiff fell some 25 feet. Harrison testified he was "following exactly the same procedure" as with the first load. "There was no point to boom out." The angle was still 10 to 15 degrees when it started tipping.

It is significant that during this line of questioning Harrison testified that when the load started tipping over while the boom was at a 10 to 15 degree angle, " * * * we started letting the load down and I tried to boom up some more. If the machine starts tipping just a little you can boom up a little and it will settle back down, or you can drop that load." He did both. He was trying to get the load down.

The jury found in answer to Special Issue No. 2 that Harrison's booming out was not negligence and therefore whether he did or not is irrelevant to this appeal.

The importance in the difference between the 7,000 and the 9,000 pound loads was apparent to all of the witnesses. The jury could reasonably conclude and probably did that the plaintiff was negligent in undertaking to ride on the second load when it was obvious that it was about one ton heavier than the previous load and that his riding such load was a proximate cause of his injuries.

It is clear from Harrison's testimony regarding his actions before the accident that he was lowering the load in "power down" rather than dropping the load which is characterized as a "free fall."

He could not let the load fall free because the plaintiff was riding on it. Harrison was not aware of plaintiff riding the load until he had swung the crane around 45 degrees from where he picked up the load.

Appellant contends that plaintiff being on the load had nothing to do with its tip-

ping over because a crane with a 35 ton capacity was handling a 4½ ton load.

The record reflects that the crane has a 35 ton capacity in only one position. The further out you are with the boom or with the load the less the capacity of the rig. Harrison said, "We started lowering the load when we cleared the structure" and "* * * we were lowering this load is when it started tipping."

The evidence further reflects that the soil collapsed under the crane's outriggers during the operation and that the outrigger sunk two feet down into the earth, with the bottom of the hole larger than the top, a condition known as a "bail hole."

The crane in this case fell over on its side. It did not tip over. The former is rare. The latter a frequent occurrence.

As we have seen the plaintiff was riding an extra heavy load. The operator was not aware of the rider until later. The crane was equipped with outriggers, the pads of which sat on the earth to help stabilize it. The workmen would never know exactly what was under the pads. The plaintiff and the other workmen were dismantling a gravel shaker which process is more dangerous than assembling. The Iron Workers Union, of which Carter was a member, has printed and published "General Working Rules," which forbid a workman to ride such a load. This rule is embodied in contract form with management which requires contractors to abide by such rules. Therefore when the plaintiff, Carter, was requested by McCaslin to ride on the load he could have refused. The Union would have backed him. He could have walked off the job with the assurance that his Union would get his daily pay for him.

It is not customary for men in the construction business to ride on loads because anything mechanical can fail.

Mr. Borman, appellant's witness and the manager of the Iron Workers Union, testified that the "possibility is always right with us" of danger that something is going wrong with the crane such as a broken cable, mechanical failure of some kind and the loss of a load.

In view of the inherent dangers attendant to a ride on a crane load it would appear obvious that an iron worker such as the appellant could reasonably foresee that when he chose to ride on the load in question that an accident could occur and cause injury to him. It is not necessary "'* * * that he anticipate just how injuries will grow out of that dangerous situation.'" Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359, 365 (1957).

The law governing proximate cause in the ordinary negligence case is also applicable in cases of contributory negligence. Postal Telegraph & Cable Co. v. Saper, 108 S.W.2d 259 (San Antonio Tex. Civ.App., 1937, no writ hist.).

The time sequence as to negligent acts on the part of plaintiff or defendant is not material when a negligent act sets in motion a natural and unbroken chain of events leading directly and proximately to a reasonably foreseeable result or injury. Porter v. Puryear, 153 Tex. 82, 262 S.W.2d 933, 936 (1953).

The question of foreseeability is resolved in the case of Enloe v. Barfield, 422 S.W.2d 905 (Tex.Sup., 1967) in which the court again points out that it is not the precise evil which befalls an actor which he must anticipate and foresee. It may be a similar one.

On the question of whether one must foresee and anticipate the negligence of another the appellant cites De Winne v. Allen, 154 Tex. 316, 277 S.W.2d (1955) for the proposition that a person is not bound to anticipate negligence or unlawful conduct on the part of another.

In De Winne the court very pointedly stated, "Every person * * * is under the duty at all times to maintain a

proper lookout for his own safety, and may not proceed blindly and in disregard of dangers that might reasonably be anticipated to exist."

The rule with regard to anticipation of another's negligence is well expressed in Humble Oil & Refining Co. v. Martin, 148 Tex. 175, 222 S.W.2d 995, 1000 (1949).

■ It seems to be well established that while a person is not bound to anticipate unlawful or negligent conduct by others, he nevertheless is under a duty to use ordinary care to prevent injury to himself or to others. Martinez v. Hernandez, 394 S. W.2d 667, 670 (San Antonio, Tex.Civ.App., 1965, ref., n. r. e.).

In our opinion the court correctly overruled the motion to disregard the jury's answer to Issue No. 11 because the plaintiff was negligent and the injury sustained was foreseeable. Further, such negligence was a cause in fact of his injury.

We have seen that Issue No. 11 contained the phrase "occurrence in question" rather than "plaintiff's injuries," because in the same case the jury was deciding a cross-action by Arlie Harrison, the crane operator, for his personal injuries. It is without doubt that in so far as the plaintiff, Carter, is concerned that the "occurrence in question" and for which he seeks monetary damages was his injury.

■ Regardless of the wording of the issue, "The rule prevails that if negligence on the part of the person injured contributed to the injuries, he is not entitled to recover for such injuries." McFall v. Fletcher, 138 Tex. 93, 157 S.W.2d 131, 133 (1941).

■ We are in accord with the position of the appellees in asserting that the negligence of the plaintiff, Carter, in riding on the load was a "cause in fact" of the entire occurrence. This is so because it seems clear to us from the testimony of plaintiff's witness, McCaslin, that cranes do tilt up on their outriggers. It is also clear

that they can be brought back to a normal position by simply dropping the load. But for the fact that the plaintiff, Carter, was riding on the load in question it could have been dropped (free fall) and the crane returned to its upright position. Thus, the plaintiff, Carter, riding on the load was a cause in fact of the entire occurrence.

■ It is well settled that negligence and causation, like any other ultimate fact, may be established by circumstantial evidence. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (1958); Sneed v. Fort Worth Transit Company, 427 S.W.2d 920, 924 (Fort Worth, Tex.Civ.App., 1968, no writ hist.).

There are other examples of circumstantial evidence on this point including testimony of the plaintiff. He had previous experience with cranes which had tilted up on their outriggers and should or could reasonably foresee and anticipate such a happening.

Testimony to the same effect was elicited from Mr. Borman, manager of the union. He stated that, "You possibly would reach the point of no return and you would have to drop the load then to save the rig."

We are of the further opinion that the plaintiff's negligence was a "cause in fact" of the entire accident as proven by direct evidence (received without objection) in the form of res gestae statements made by Arlie Harrison at the gravel yard within thirty minutes after the accident happened and before Harrison left the scene in an ambulance. The fact that Harrison was injured adds further credibility to his declaration, because it tends to eliminate the possibility of premeditation. Texas Employers Ins. Ass'n v. Noel, 269 S.W.2d 835 (Fort Worth, Tex.Civ.App., 1954, ref., n. r. e.).

In Parrott v. Garcia, 436 S.W.2d 897, 901 (Tex.Sup., 1969) it was said that, "The present Court has inherited the well established common law principle that contributory negligence proximately causing injury

is a bar to recovery against a negligent defendant."

 "Courts are authorized to set aside jury findings on questions of proximate cause because of the absence of evidence to support them only in exceptional cases. Liberty Film Lines v. Porter, 136 Tex. 49, 146 S.W.2d 982, at 983 (1941). This is not such a case." Enloe v. Barfield, supra.

From our examination of the record as a whole we have concluded that the trial court did not commit error. All of the appellant's points of error are overruled as are the appellees' cross-points.

The judgment of the trial court is affirmed.

Affirmed.