**H. E. BUTT GROCERY COMPANY,**
**Appellant,**

v.

**Ethel C. ISRAEL et vir., Appellees.**

**No. 5644.**

Court of Civil Appeals of Texas,
Waco.

Dec. 2, 1976.

Rehearing Denied Dec. 30, 1976.

Louis S. Muldrow, Naman, Howell, Smith & Chase, Waco, for appellant.

Leonard L. Gorin and Boyd Mangrum, Waco, for appellees.

## OPINION

JAMES, Justice.

This is a venue matter concerning a slip and fall case. Plaintiff-Appellees Ethel C. Israel and husband Frank Israel brought this suit in McLennan County against Defendant-Appellant H. E. Butt Grocery Co. for personal injuries sustained by Mrs. Israel occasioned by her slipping and falling while a customer in Appellant's store. Appellant filed a plea of privilege to be sued in Nueces County; whereupon Appellees controverted under subdivision 9a of Article 1995, Vernon's Texas Civil Statutes. The trial court after hearing overruled Defendant-Appellant's plea of privilege, from which it appeals. We reverse and render.

Defendant-Appellant was the owner of H. E. B. Food Store No. 8 located in Waco, McLennan County, Texas, said store being a supermarket containing groceries, produce, meat, drugs and other items usually found at stores of this type, together with an adjacent parking lot. On June 20, 1973, Mrs. Israel drove to this store, parked her car on the parking lot, entered the store, and bought some items of groceries, including a case of canned soda water, consisting of twenty-four cans of ten ounces each. Mrs. Israel testified that after she paid for these grocery items, they were placed in a push-cart for convenience in transporting them out of the store to her car on the parking lot. She further testified that the store manager, Mr. James M. Allen, came over to where the push-cart was located at the checkout stand and assumed control of the cart and began pushing it ahead of him, with Mrs. Israel following him as they prepared to leave the store.

The public entrances to this store consisted of two sets of electrically operated doorways, one being on the north side of the front of the store and the other on the south side of the front of the store. The doorway unit by which Mrs. Israel exited on the occasion in question was the one on the north side of the front of the building. When viewed from the outside of the store, the unit consisted of an entrance doorway to the right and an exit doorway to the left of the center post, with a guard rail extending from the center post toward the inside and outside of the door between the exit way and the entrance way. The doors are designed to operate automatically by opening when a person steps on the rubber or vinyl mat, and by closing when a person stops stepping or standing on the mat. Each mat extends a few feet to the inside of the store and to the outside of the store from the threshold, and is bordered by pieces of aluminum trim. The mat is a darker color than the surrounding concrete sidewalk, and is about a half inch higher than the surrounding sidewalk. The aluminum trim is approximately two inches wide surrounding the mat, and is bevelled downward from the edge of the mat to the sidewalk. The aluminum trim is mitred at each corner at 45 degree angles to the strips. The top of the mats were flush with the upper or inner sides of the trim, and the evidence shows that on the occasion in question none of the mats or aluminum strips bordering same were defective, loose, out of place, or projecting above or below their normal, apparent, intended height. Attached herewith are two photographs admitted in evidence showing the double doors in question and the particular doormat upon which Mrs. Israel slipped and fell.

PL. Ex. 1

PL. Ex. 2

This store was opened for business in November 1969, at which time the doors were installed for use, said doors having been situated and operating in the same manner since the opening of the store until June 20, 1973, the date of the occasion in question. In other words, there had been no change in the location and manner of use and operation of these doors from the time the store opened for business, up through the time of the occasion in question. These were sliding doors as opposed to those which swing open and shut on hinges.

At the time Mrs. Israel was leaving the checkout stand and proceeding to leave the store, the exit doorway, which would have been the one to Mrs. Israel's right as she exited the store, was, according to Mr. Allen's testimony, fixed in the closed position, and a Mr. Al Looney, a window washer, was stooped or crouched in that doorway washing that door. Mrs. Israel testified that both of the sliding doors were fixed in the open position, but that there was someone crouched down in the exit door blocking that exitway. Seeing this situation, Mrs.

Israel went out through the doorway on her left, which was the normal entrance way.

Contrary to Mrs. Israel's testimony, Mr. Allen testified that he followed behind Mrs. Israel as she went from the checkout stand and out the door, and that he carried the groceries in his arms, by holding the case of canned soda water in his hands with the sack of groceries on top of said case.

Be that as it may, Mrs. Israel observed the person crouched in the normal exit doorway, said she was "kind of hesitant," and then proceeded on out the doorway on her left, same being the doorway normally used for entering the store. As she crossed the threshold, she veered slightly to her left in the general direction toward where her car was parked. She testified that as she prepared to step off of the rubber or vinyl mat, she placed her left heel down on the mitred corner of the metal stripping, and that her foot slipped off of the corner and out from under her and caused her to fall.

Mr. Allen testified that he was behind Mrs. Israel carrying her groceries in his arms, that he saw her fall but did not observe or know exactly what caused her to fall.

As stated, this store opened for business in November, 1969, and this accident occurred on June 20, 1973. Mrs. Israel testified that she had been a customer and had shopped in this store on an average of once every two weeks prior to her fall, and had done so since the store opened in November, 1969. This means that she had made approximately eighty-six visits to this store at the time of the accident in question. As stated, there had been no changes in the mats and doors from the time of their installation. Mrs. Israel testified that there was nothing to obstruct or obscure her view of the door, the mat, and the surrounding metal strips immediately prior to and at the time of her fall.

Mr. Allen, the store manager, testified that since this store opened for business it has had a customer count averaging 6,000 to 7,000 persons per week, all of whom use the two sets of front doors hereinabove mentioned, and that there had been no falls or accidents on or about the doorways or mats except that of Mrs. Israel. See *Seideneck v. Cal Bayreuther Associates, Inc.* (Tex.1970) 451 S.W.2d 752.

■ Under these circumstances, we are of the opinion and hold that Mrs. Israel's knowledge and familiarity with the conditions that existed concerning the doorway and mat in question charged her, in law, with notice, knowledge, and appreciation thereof.

■ Ordinarily a plaintiff-invitee cannot recover if he (or she) knows of the condition, realizes the danger, and appreciates the danger, or is charged in law with such knowledge, realization, and appreciation. *Wesson v. Gillespie* (Tex.1964) 382 S.W.2d 921; *Houston National Bank v. Adair* (Tex. 1948) 146 Tex. 387, 207 S.W.2d 374; *Beall Brothers Inc. v. Benton* (Tyler Tex.Civ.App. 1972) 478 S.W.2d 157, no writ; *Corley v. Laco Rentals* (Waco Tex.Civ.App. 1972) 487 S.W.2d 446, no writ. Also see *Adam Dante Corp. v. Sharpe*, (Tex.1972) 483 S.W.2d 452, which approves and reaffirms *Wesson v. Gillespie*, supra.

In the *Adair* case, the court assumed the dangerous condition was not open and obvious and that the area in which Mrs. Adair fell was not properly lighted. Nevertheless Mrs. Adair had been on the stairs many times, and because of her many exposures to the condition, the court charged her in law with knowledge, realization, and appreciation of the condition. In the *Wesson* case, where plaintiff had crossed the same threshold two to five times a week for four or five years, under the same premises conditions, the court charged plaintiff in law with knowledge and appreciation of such conditions.

In the case at bar the situation and condition of the doorway, mat, and stripping was static, the defect if any there was, was not latent, and Mrs. Israel had by her own admission been through these doorways many times over of some three and a half

years leading up to the time of the accident in question. Under such facts she is charged with knowledge and appreciation thereof as a matter of law.

Mrs. Israel contends that since she was forced to go out the door customarily used for entrance, that the handrail was to her right instead of to her left; and since she fell to the left she had no handrail to grab hold of as she fell. She thereby charges the Defendant with negligence in failing to provide her with a handrail to her left. We overrule this point, because here again she is charged with knowledge and appreciation of this condition. See *Houston National Bank v. Adair* (Tex.1948) 146 Tex. 387, 207 S.W.2d 374; *Beall Brothers, Inc. v. Benton* (Tyler Tex.Civ.App.1972) 478 S.W.2d 157, no writ. In both *Adair* and *Benton* handrails were absent.

Finally, Plaintiff-Appellees insist that this is not only a "premises conditions" case, but they have alleged and proved acts and omissions of negligence on the part of the Defendant-Appellant and its employees which if true, support the trial court's judgment. All of the grounds of negligence alleged by Plaintiffs are concerned with premises conditions except the following:

"(a) permitting its employee to obstruct the normal exit doorway, thereby forcing Ethel C. Israel to exit the store by a strange and unaccustomed route;

.    .    .    .    .

(f) leading plaintiff Ethel C. Israel out of the entrance rather than the exit doorway."

On cross-examination Mrs. Israel negated the above-quoted two alleged grounds of negligence, as evidenced by the following excerpt from the statement of facts:

"Q. Was there anything about the fact that you walked out of the store through the door to the left rather than the door to the right that confused you or caused you disorientation or loss or lack of balance or

that created or caused difficulty in walking or stepping, any of those things?"

"A. Of course not.

"Q. Okay. Did the fact that there was a man blocking the door to the right, the normal exit door, was there anything about the fact that he was there that interfered with your negotiating the door to the left? In other words, walking through it?

"A. No.

.    .    .    .    .

"Q. Yes. Was there anything about the fact that there was a man blocking the door to the right that had anything at all to do with your fall?

"A. No."

By the above-quoted testimony Mrs. Israel acquitted the Defendant of negligence in the two alleged grounds hereinabove quoted. All of the rest of Plaintiffs' pleaded grounds of negligence were directly concerned with premises conditions, regarding which she was charged as a matter of law with knowledge and appreciation thereof, and therefore Plaintiffs cannot prevail upon these grounds.

For the reasons above stated, we hold that Plaintiff-Appellees have failed to establish their right to maintain venue in McLennan County. Since the facts concerning venue appear to have been fully developed, we reverse and render the trial court's judgment and transfer the cause to Nueces County, Texas.

REVERSED AND RENDERED.