Jimmie **WOODARD**, Appellant,

v.

**MARATHON LETOURNEAU COMPANY**, Appellee.

No. 1276.

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 29, 1978.

Rehearing Denied Sept. 21, 1978.

Lee Arnett, Brownsville, for appellant.

John E. Lewis, Jones & Lewis, McAllen, for appellee.

## OPINION

YOUNG, Justice.

This is an appeal by the plaintiff worker from an unfavorable trial court judgment resulting from a jury trial wherein he sought damages from the owner of the premises for his personal injuries arising from an industrial accident.

Jimmie Woodard sued Marathon LeTourneau Company for injuries sustained when he fell while single-handedly lifting a heavy sheet of steel plate. Trial was to the court with a jury which decided that Woodard was guilty of two separate acts of contributory negligence. The court rendered a take nothing judgment in favor of Marathon from which Woodard appeals. We affirm.

The evidence indicates that on August 14, 1972, Marathon and Kirk-Mayer, Inc., Woodard's employer, entered into a contract whereby Kirk-Mayer agreed to hire and oversee construction crews for the subassembly of component parts for off-shore drilling rigs appellee was manufacturing.

Kirk-Mayer's operation was located on a 300 × 125 foot concrete platform, which, at the time of the accident, was crowded with workers, machines, and steel. So crowded, according to Woodard, that from time to time forklifts were unable to reach some areas of the platform to help move large pieces of steel.

Further, according to Woodard, on November 14, 1972, Woodard's supervisor asked him to section a large sheet of defective steel which was resting on top of several sawhorses. Appellant cut the steel into several smaller pieces and then decided to remove from the sawhorses one of the cut pieces which weighed from 300 to 600 pounds. There were no cranes available to lift the steel, and the work area was so cluttered with scrap steel, hoses, wires and steel sheets that forklifts could not reach him. The team of workers that often helped him move such pieces of steel was working on a different project located on another part of the concrete slab. Woodard then decided to slide the steel off the sawhorses onto his thighs, rotate and drop the steel onto a scrap heap. He followed his intended procedure, but as he was turning, he slipped on a hose or wire and fell onto the scrap steel pile causing serious damage to his back and internal organs.

Woodard sued Marathon for, among other things, breach of contract based on Marathon's failure to provide Woodard with a lifting crane at the time of the accident. He claimed that the contract between Marathon and Kirk-Mayer required Marathon to provide a "cherry-picker" crane to Kirk-Mayer employees at all times and that he was a third-party beneficiary of that contract.

In answer to special issues the jury found that the occurrence in question was proximately caused by the negligence of Marathon and the contributory negligence of Woodard in the following respects: (1 through 3) that Marathon failed to furnish Woodard with a "cherry-picker" crane or other lifting device to lift the piece of steel with which Woodard was working; (6 and 7) that Woodard attempted to remove the piece of steel without help; (8 and 9) that Woodard failed to remove the air hoses and electrical lines from his work area before attempting to remove the piece of steel. The jury refused to find (4 and 5) that the occurrence was proximately caused by Woodard's failure to keep such a lookout for his own safety as a person using ordinary care would have kept. The total damages (10) awarded by the jury were $150,000.00.

Appellant, Woodard, brings forward 19 points of error and appellee, Marathon, brings forward 11 cross points. Woodard's point 1 contends that the trial court erred in overruling his motion for judgment on the verdict because the evidence establishes as a matter of law that Marathon breached a third-party beneficiary contract entered on Woodard's behalf. Appellant particularly points to the jury's answers to special issues 1, 3 and 10 to establish appellee's breach. No other issues relative to a breach of third-party beneficiary contract

theory were submitted to the jury. During the course of the trial appellant introduced the contract between Marathon and Kirk-Mayer, for the court's use only, so that it might construe its provisions. As a consequence, appellant argues in his brief that his right to enforce the contract was established as a matter of law.

We agree with appellant that the jury's answers to special issues 1, 3 and 10 embrace appellee's breach of contract theory by showing a breach, causation and damages. See *Bildon Farms, Inc. v. Ward County Water Imp. Dist. No. 2,* 415 S.W.2d 890, 894 (Tex.Sup.1967); see also *Howell v. Kelly,* 534 S.W.2d 737, 740 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ); *LaBlanc, Inc. v. Gulf Bitulithic Company,* 412 S.W.2d 86, 94 (Tex.Civ.App.—Tyler 1967, writ ref'd n. r. e.). We do not agree, though, that other required elements of appellant's action were established as a matter of law.

■ In that regard, in order for Woodard to recover on his third-party beneficiary contract theory he also had to prove, first, the existence of a contract to provide a "cherry-picker" crane and other lifting devices for the employees of Kirk-Mayer. *Howell v. Kelly,* supra, *Casey v. Watts,* 130 S.W.2d 396, 398 (Tex.Civ.App.—Waco 1939, writ dism'd jdgmt. cor.). Second, he had to prove that the contract was made expressly and primarily for the benefit of Kirk-Mayer employees. *House v. Houston Waterworks Co.,* 88 Tex. 233, 31 S.W. 179 (1895); *Banker v. Breaux,* 133 Tex. 183, 128 S.W.2d 23 (Tex.Comm'n App.1939, opinion adopted) and *Casey v. Watts,* supra. And finally, he had to prove that Kirk-Mayer had either performed its obligation under the contract, or was ready, willing and able to do so. See *Howell v. Kelly,* supra, *Bartex, Inc. v. Austin Paving Company,* 502 S.W.2d 569, 570 (Tex.Civ.App.—Austin 1973, writ dism'd); *Ryan v. Thurmond,* 481 S.W.2d 199, 204 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n. r. e.).

■ About the existence of a contract to provide a "cherry-picker" crane and other lifting devices, Woodard contends in his brief that Marathon "admitted that under the contract it was responsible for providing lifting devices to the employees of Kirk-Mayer." Admissions under Rule 169, T.R. C.P., should be construed in the same manner as judicial admissions. *Thornell v. Equitable Life Assurance Soc. of U.S.,* 385 S.W.2d 716 (Tex.Civ.App.—Texarkana 1964, no writ). See *Esteve Cotton Co. v. Hancock,* 539 S.W.2d 145 (Tex.Civ.App.—Amarillo 1976, writ ref'd n. r. e.). For a statement to constitute a judicial admission of a disputed issue, however, it must be clear, deliberate and unequivocal. *Hedge v. Bryan,* 425 S.W.2d 866, 868 (Tex.Civ.App.—Tyler 1968, writ ref'd n. r. e.).

■ The admission to which Woodard refers states:

"11. Admit that Marathon LeTourneau was responsible for providing lifting devices such as cranes to the slab for the use of the employees of Kirk-Mayer for the performance of the work contemplated by the contract between Marathon LeTourneau Company and Kirk-Mayer dated August 14, 1972."
Answer: *True"*

While appellee did, indeed, admit that it was "responsible" for providing lifting devices, it did not clearly admit to the execution of a contract creating the responsibility. Appellant also implies that the contract dated August 14, 1972, provided for a "cherry-picker" crane and other lifting devices. We find no such expression in the contract.[1] After carefully reviewing the record we find no evidence of the execution of a contract between Kirk-Mayer and Marathon which required Marathon to provide certain lifting devices to Kirk-Mayer employees.

About whether a contract was made expressly and primarily for the benefit of Kirk-Mayer employees, we begin with the general rule:

---

1. Marathon did specify in the August 14th contract that it would provide hardhats, safety glasses and all toolroom equipment as necessary, but no mention was made of any lifting devices. The contract also stated that it was the entire agreement of the parties and no oral statements could alter the terms of the agreement.

"[T]he intention of the contracting parties is of controlling significance to a determination that a third party may enforce [a] contract provision. In deriving intent, we must begin with the presumption that parties contract for themselves, and a contract will not be construed as having been made for the benefit of third parties unless it clearly appears that such was the intention of the contracting parties."

*Corpus Christi Bank and Trust v. Smith,* 525 S.W.2d 501, 503–4 (Tex.Sup.1975). Not only is there no contract here which provides for lifting devices, but the contract which we have in the record presents no indication that it was entered primarily for the benefit of Kirk-Mayer employees.

About the third requirement that appellant show that Kirk-Mayer had either performed its obligation under the purported contract or was ready, willing and able, there is no evidence. Appellant's first point is overruled.

Appellant's points 2, 3, 8 and 9 contend that there was no evidence to support the submission of contributory negligence issues numbered 6 and 7 (about lifting the steel without help) and that the jury's answers to these issues were supported by insufficient evidence. We disagree.

In considering a no evidence point this Court must consider only the evidence and the inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.Sup.1965). When considering an insufficiency of the evidence point we consider all the evidence in the record and remand if the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

About whether appellant was negligent in attempting to move the steel by himself, he testified that if he ever needed help moving something, he would get someone to give him a hand. He further testified that the steel he picked up weighed from 300 to 600 pounds. We find this evidence sufficient to justify submission of special issues 6 and 7. As for the insufficiency of the evidence point, we find after reviewing the entire record that the jury's answers to the issues were supported by sufficient evidence. The fact that appellant testified it was customary for him to dispose of steel in this manner does not establish that he was not guilty of contributory negligence as a matter of law. 65A C.J.S. Negligence § 121b (1966).

Appellant also contends that his statement on the stand that "I guess if it had weighed 20 pounds I would have still fell the same way" compels the Court to hold that Woodard's picking up the steel was not a proximate cause of the injury. The jury, however, need not believe an interested party's testimony. *Broesche v. Bullock,* 427 S.W.2d 89, 95 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n. r. e.). Moreover, his statement was, at best, conjecture and is not binding upon the jury or this Court. Appellant's points 2, 3, 8 and 9 are overruled.

Appellant's points 4 through 7 contend there was no evidence to support the submission of contributory negligence issues numbered 8 and 9 (about lifting the steel before removing hoses and lines), particularly because there was no evidence that appellant had a duty to remove the hoses in that it was not shown that he had a right to remove them. Points 10 and 11 contend there was insufficient evidence to support the jury's answers to special issues 8 and 9.

Concerning the appellant's no evidence and insufficient evidence contentions we find there was ample evidence to show appellant's duty to remove the hoses. The evidence is undisputed that Woodard knew the hoses were strewn about his work area and that it was dangerous to step on them. Woodard then must have also appreciated the danger in single-handedly lifting a 300 to 600 pound piece of steel while surrounded by these various hoses. One may not proceed blindly and in disregard of dangers that might reasonably be anticipated to exist. *Carter v. Harrison,* 447 S.W.2d 704, 708

(Tex.Civ.App.—Fort Worth 1969, writ ref'd n. r. e.). Woodard had a duty to exercise that degree of care that a reasonably prudent person would have exercised under the same or similar circumstances to avoid injury. See *Brown v. Frontier Theatres, Inc.,* 369 S.W.2d 299 (Tex.Sup.1963); see also 65A C.J.S. Negligence § 121 (1966). We think that under these circumstances his duty of care included the removing of the hoses from the area upon which he expected to move. We also find the evidence sufficient to show that his failure to remove the hoses was negligence and a proximate cause of his injury. We disagree that there is no evidence that Woodard had a right to remove the hoses. The evidence clearly shows that Kirk-Mayer employees had the right to move hoses from time to time. Appellant's points 4 through 7, 10 and 11 are overruled.

Appellant's points 12 through 19 submit that special issues 6 and 8 are phases and shades of special issue 4, and that special issues 7 and 9 and phases and shades of special issue 5. The gist of appellant's argument is that the issue concerning "lookout for his own safety", i. e., special issue 4, encompassed all other issues dealing with specific acts of negligence of appellant in this situation and that, accordingly, the jury's exonerating appellant of a failure to keep a "lookout for his own safety" precludes any jury findings on negligence in lifting the steel without help and in failing to move the hoses. More specifically, appellant contends that since there is no specific definition of "lookout for his own safety", and since it is analogous to the "proper control" issue discussed in *Barclay v. C. C. Pitts Sand and Gravel Company,* 387 S.W.2d 644 (Tex.Sup.1965), the "lookout" issue embraces any and every act or omission on Woodard's part which affected his safety. We disagree.

We are unable to find any case which specifically defines the phrase "lookout for his own safety." But "proper lookout" was defined for the jury in this case and is generally defined as "that type of lookout which an ordinarily prudent person

would have maintained under the same or similar circumstances." *Lane v. Dallas Transit Company,* 331 S.W.2d 821 (Tex.Civ. App.—Amarillo 1959, writ ref'd n. r. e.); *Frank v. Walton,* 326 S.W.2d 295 (Tex.Civ. App.—Texarkana 1959, writ ref'd n. r. e.). Another phrase which imparts a similar connotation is that an adult must exercise "care for his own safety." See e. g. *Tidy Didy Wash v. Barnett,* 246 S.W.2d 303 (Tex. Civ.App.—Galveston 1952, writ ref'd n. r. e.); *Kirby Lumber Corporation v. Murphy,* 271 S.W.2d 672 (Tex.Civ.App.—Beaumont 1954, no writ); 40 Tex.Jur.2d rev. Part 2 Negligence § 86 (1976). It is generally agreed that the duty to care for one's own safety includes the duty to keep a proper lookout. *Tidy Didy Wash v. Barnett,* supra, *Locke v. J. H. Marks Trucking Company,* 318 S.W.2d 1 (Tex.Civ.App.—El Paso 1958, no writ), 40 Tex.Jur.2d rev. Part 2 Negligence § 86 (1976). Often, the phrases "proper lookout" and "care for one's own safety" are combined and termed "proper lookout for one's safety." See e. g. *DeWinne v. Allen,* 154 Tex. 316, 277 S.W.2d 95, 98 (1955). Often, both "proper lookout" and "lookout for one's own safety" are used as synonymous terms. *DeWinne v. Allen,* supra; *Rosales v. Lara,* 519 S.W.2d 245 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.); *Jameson v. Melton,* 366 S.W.2d 115 (Tex.Civ.App.—Dallas 1963, no writ). And we find no material distinction between the two phrases.

Did, then, the jury's answer exonerating Woodard of failure to keep a lookout for his own safety exonerate him of all specific acts of negligence raised by the evidence and submitted to the jury? We think not.

The evidence shows that Woodard evaluated the situation before him and knew and fully understood that the piece of steel he was lifting weighed from 300 to 600 pounds, and that often he would call for assistance in lifting such a heavy piece of steel. As far as the hoses were concerned, the testimony is clear that Woodard had seen most of the hoses on the ground earlier in the day. The evidence also shows that he

walked on many of these hoses prior to his injury. Immediately prior to the accident one of the other employees brought additional hoses into Woodard's area. Woodard knew of these hoses and the danger they posed. We think the evidence is clear, then, that Woodard kept a proper lookout, i. e., he knew of the existence of numerous hoses in his area and he fully appreciated the danger which they posed. Yet, he lifted the steel and attempted to dispose of it in the face of this danger. Consequently, we think his subsequent actions of negligence were independent of his keeping a proper lookout.

A similar issue was raised in *Christian v. Martin & Company*, 384 S.W.2d 202 (Tex. Civ.App.—Eastland 1964, writ ref'd n. r. e.). There, the plaintiff sued for injuries suffered when he was struck by some pipe that dislodged when pipe was unloaded from one truck and stacked on a lowboy trailer pulled along side the truck being unloaded. The jury answered special issues in relevant part as follows: 1) the defendant was negligent in carelessly stacking the pipe and this was a proximate cause of the accident; 2) plaintiff was negligent in walking between the trucks and this was a proximate cause of the accident; 3) plaintiff did not fail to keep a proper lookout; 4) plaintiff was not negligent in failing to move his truck prior to the accident; 5) plaintiff did not fail to advise appellee's employees of his intention to walk between the trucks. The plaintiff was denied recovery based upon contributory negligence. On appeal he contended the court should have disregarded the jury's answer to the "walking between the trucks issue" because it was included in the issues 3, 4 and 5. The court overruled his contentions stating that the specific findings (3, 4 and 5 above) related to alleged negligent action on the part of the plaintiff entirely separate and apart from any negligence in walking between the trucks. The court laid special emphasis on the fact that plaintiff admittedly appreciated the danger associated with walking between the trucks, yet did it anyway. See also *Whitfill v. Hunt*, 387 S.W.2d 653 (Tex.Sup.1965). In *Whitfill*, the plaintiff did not fail to keep a proper lookout but failed to apply his brakes; the brakes issue was held to be a separate and independent issue. In *Broesche v. Bullock*, supra, proper lookout was held not to include the issue of a separate act of negligence. Appellant's points 12 through 19 are overruled.

In that we have overruled all of appellant's points it is unnecessary for us to consider appellee's cross points. The judgment of the trial court is therefore affirmed.