CATERPILLAR TRACTOR
COMPANY, Appellant,

v.

Anthony Paul CROPPER, Appellee.

No. 9481.

Court of Appeals of Texas,
Texarkana.

Sept. 30, 1986.
Rehearing Denied Nov. 12, 1986.

Eugene W. Brees, II, Thompson & Knight, Dallas, George LeGrand, San Antonio, for appellant.

Russell H. McMains, Edwards, Perry, McMains & Constant, Corpus Christi, for appellee.

CORNELIUS, Chief Justice.

Anthony Paul Cropper, an employee of the Chevron Resources Uranium Mine in Panna Maria, Texas, was injured when the Caterpillar 651B water wagon he was operating ran over a large, folded metal backhoe track. Suit was brought against Caterpillar on theories of strict product liability and negligence. The jury found against Caterpillar on all liability issues and refused to find Cropper contributorily negligent. On appeal Caterpillar raises various points of error, including the contention that the jury's failure to find Cropper contributorily negligent was against the great weight and preponderance of the evidence. We agree and remand the case for a new trial.

On December 29, 1981, Anthony Paul Cropper was operating a Caterpillar 651B water wagon. The 651B water wagon is a large off-road vehicle used to spray water for dust control. The cab of the vehicle, designed and manufactured by Caterpillar, contains the operator's seat, the controls and the engine compartment. The cab is connected to a large water tank via a gooseneck-type connection. The tank holds over 12,000 gallons of water and is equipped with nozzles at the rear which can spray water about thirty feet to either side. The operator's seat in the cab is positioned on the left. The engine is situated to the right front of the operator's compartment. The engine has a large muffler and air cleaner which extend from the engine compartment. The muffler is about five feet high and is oblong shaped, with the narrower side facing the operator. The air cleaner is approximately one-half as tall as the muffler, but is larger in diameter. The muffler is located about six feet and the air cleaner about nine feet from the driver's position.

Cropper was an experienced 651B operator. He had driven 651B's for fourteen months before the accident. Chevron owned and operated more than twenty 651B's, all of which Cropper had driven and operated. He was thoroughly familiar with the visibility characteristics of the 651B cab, including the restricted visibility to the right. His training in connection with the 651B included instructions that, when turning the vehicle, a left-hand turn should be used.

The accident occurred as Cropper was watering a large, open field called the equipment pad. At the time of the collision, the pad was also occupied by another Chevron employee, Gail Creek. Creek was repairing a backhoe tractor. The repairs required one of the tractor's heavy metal tracks (similar to a tank or bulldozer track) to be removed. The track had been pulled south of the tractor and folded or stacked to a height of approximately three feet. The folded stack was about fifteen feet long and weighed aproximately 13,000 pounds.

As Cropper entered the field to begin his watering, he noticed the backhoe and track and he was aware of Creek, who was standing near the backhoe. Cropper began to water the field in an up-and-back pattern. His first pass to the top of the field was about eighty feet east, traveling parallel to the backhoe, with the backhoe and the track to his left. At the top of the field he turned left 180 degrees and began to travel back down the field. The backhoe and track were again parallel to Cropper, but were now about twenty-five feet to his right. As he neared the backhoe, he slowed the water wagon to avoid spraying Creek. Once past the backhoe, he accelerated and began to turn right. At this point, the front wheels of the cab struck the track, driving the cab up and over it. The impact of the cab as it came down forced the operator's chair in which Cropper was sitting to bottom-out, which caused a compression fracture of Cropper's low back with resulting serious injuries.

It was Cropper's contention that the cab was defectively designed due to the visibility restrictions caused by the hood, muffler, and air cleaner. He testified that the restrictions were such that even though he was aware of the track and was looking for it as he turned, he was unable to see to his right sufficiently to avoid the collision.

Cropper's expert, Dr. Vaughn Adams, testified that Cropper was not negligent in operating the 651B. He stated that the cab was designed with severe visual obstructions, particularly in the right quadrant forward from the operator's position. It was Adams's opinion that these visual restrictions were present for nearly forty-six feet outward from where Cropper sat while driving the vehicle. Adams constructed a scale model and diagrams which demonstrated the restricted visibility of the 651B cab.

Caterpillar's expert, Dr. Craig Smith, also prepared a scale model of the path of travel. Smith believed Cropper could have seen the track at all times until "a minute fraction of a second before impact." Caterpillar also called Joe Geier, a professional heavy-duty equipment operator. Geier testified that he was very familiar with the characteristics of the 651B. It was his opinion that the obstructions about which Cropper complained were of little practical significance because an operator could move his head slightly and look around the muffler and air cleaner. Geier further stated that he had experienced no visibility problems whatsoever when working with the 651B. There was also testimony that the obstructions were not significant because when the 651B was in operation the muffler and air cleaner constantly moved in front of the landscape causing any object in the background to be obscured only for a brief moment. Caterpillar further introduced the testimony of August Weiss, a shop superintendent for H.B. Zachary Company. Weiss was familiar with the 651B cab and opined that while the hood of the cab could cause some visibility problems, there was no difficulty looking around the muffler. Enlarged photographs demonstrated that the muffler and air cleaner constituted only small obstructions to visibility to the operator's right.

After considering and weighing all of the evidence, we conclude that the jury's finding that Cropper was not negligent in his operation of the water wagon is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust.

■ Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection and which is a legally contributing cause, cooperating with the negligence of the defendant in bringing about the plaintiff's harm. Restatement (Second) of Torts § 463 (1965). The standard of conformity is that of a reasonable man under like circumstances. Restatement (Second) of Torts § 464 (1965).

■ Even conceding the visibility restrictions alleged by Cropper, a failure to find contributory negligence is against the great weight and preponderance of the evidence. It was undisputed that Cropper was an experienced operator, fully aware of the visibility problems assoicated with his equipment. He saw the track, the size and nature of which presented an open and obvious danger, when he entered the field. By his own admissions he knew the track was to his right and that he was near it when he began his turn. In spite of this knowledge, he made no attempt to look around the obstructions, failed to proceed far enough so that by looking back he could see if he was past the track, and took no safety precaution whatsoever. He did not utilize alternatives which were available and which could have prevented the accident, such as executing a stop-to-stop maneuver,[1] using a left turn rather than a right turn, or slowing down so that he

---

1. A stop-to-stop maneuver allows the driver to turn the cab a full ninety degrees to both his right and left without traveling forward.

could see the track[2] in front of him in time to stop or evade it. Indeed, he *accelerated* as he went into the right turn when, according to him, he knew he could not see the track. Ordinarily, conduct in proceeding ahead under visibility restrictions while cognizant of an imminent obstruction, and without taking advantage of alternative safety measures, does not conform to the standard of reasonable conduct. One may not proceed blindly and in disregard of dangers that might reasonably be anticipated to exist. *DeWinne v. Allen,* 154 Tex. 316, 277 S.W.2d 95 (1955); *Woodard v. Marathon LeTourneau Co.,* 570 S.W.2d 552 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

■ One's conduct in proceeding after he has full knowledge of the danger is not always negligent. It may be justified or condemned, depending on such things as the actor's status, the nature of the danger, the urgency or lack of it for reaching a destination, the existence of an alternative, the availability of help from others, and the precautions taken by the actor for his own safety. *Parker v. Highland Park, Inc.,* 565 S.W.2d 512 (Tex.1978). As to status, it was undisputed that Cropper was an experienced operator of the vehicle in question. He had been instructed in its proper use, including instructions in making stop-to-stop maneuvers and to use left-hand turns rather than right-hand turns. The evidence is undisputed that there was no urgency in Cropper's work at that point or in reaching a destination via that route. He knew and appreciated the danger. Several reasonable alternatives existed which if used would have avoided the collision. He could have asked Gail Creek, whom he knew was nearby, if the 651B had cleared the track. And he took no precautions for his own safety except, according to his testimony, he guessed that he was far enough along to miss the track and he just guessed wrong. In the face of these admitted facts, a failure to find Cropper's action negligence is against the great weight and preponderance of the evidence. *See Guf-*

*fey v. Borden, Inc.,* 595 F.2d 1111 (5th Cir.1979); *Parker v. Highland Park, Inc.,* supra; *DeWinne v. Allen,* supra; *Woodard v. Marathon LeTourneau Co.,* supra; *H.E. Butt Grocery Co. v. Israel,* 544 S.W.2d 769 (Tex.Civ.App.—Waco 1976, no writ); *Patino v. Furr's Supermarkets,* 512 S.W.2d 54 (Tex.Civ.App.—El Paso 1974, writ ref'd n.r.e.); *Rohan v. Baker,* 470 S.W.2d 238 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.); *Carter v. Harrison,* 447 S.W.2d 704 (Tex.Civ.App.—Fort Worth 1969, writ ref'd n.r.e.); *Ingram v. Texas Industries, Inc.,* 396 S.W.2d 423 (Tex.Civ.App.—Fort Worth 1965, writ ref'd n.r.e.); *Jameson v. Melton,* 366 S.W.2d 115 (Tex.Civ.App.—Dallas 1963, no writ); *Southwestern Hydrocarbon Company v. Thompson,* 355 S.W.2d 823 (Tex.Civ.App.—Waco 1962, writ ref'd n.r.e.).

A jury will have to determine, of course, the degree to which this conduct on Cropper's part contributed to cause the accident. Such a determination has not been made because that issue was contingent upon the jury's affirmative answer to the contributory negligence issue.

Our disposition of this issue makes it unnecessary to address the additional points of error. The judgment of the trial court is reversed and the cause is remanded for a new trial.

---

2. Visibility was relatively unobstructed to the front of the cab.